536 A.2d 505

Frederick A. Catagnus et al. *v.* County of Montgomery, A. Russell Parkhouse, Paul A. Bartle and Rita C. Banning, Commissioners, Montgomery County Solid Waste Management System. A. J. Catagnus et al., Appellants.

Argued December 14, 1987, before Judges MAC-PHAIL and DOYLE, and Senior Judge BARBIERI, sitting as a panel of three.

*Francis Recchuiti, Vangrossi and Recchuiti,* for appellants.

*Andrew L. Braunfeld,* with him, *R. Bruce Morrison, Masterson, Braunfeld, Himsworth & Maguire,* for appellees.

OPINION BY JUDGE DOYLE, January 27, 1988:

Frederick A. Catagnus and other private trash haulers[1] (Appellants) appeal from an order of the Court of Common Pleas of Montgomery County which dismissed their "Motion for a Preliminary Injunction to Enforce Settlement Agreement" against the County of Montgomery (County). We affirm the judgment of the trial court.

Starting in 1971, the County began to operate two adjacent landfills for the purposes of waste reception and trash removal.[2] The property upon which these landfills were located is owned by Smith Kline-Beckman Corporation (SKB). Landfill No. 1 was closed for the purpose of accepting solid waste in 1983. On July 19, 1984, the County Commissioners ordered Landfill No. 2 (Landfill) closed as of August 20, 1984 to all individuals and entities with whom the County did not have a written contract for waste disposal. Their action was taken to extend the life of the Landfill.

---

[1] Appellants are private trash haulers who operate waste removal and disposal businesses within Montgomery County. They are A.J. Catagnus, Inc., Do-A-Way, Inc., Santangelo Hauling, Inc., John Miller, Inc., Louis F. Mascaro, Sr., t/a Louis F. Mascaro, Sr. & Sons Rubbish and Scrap Metals, Charles J. Ruser, t/a Ruser's Rubbish Removal, North Penn Sanitation, Inc., Sam's Keystone Sanitation Co., Inc., F.A. Catagnus & Sons, Inc., John P. Cook, t/a John P. Cook Sanitation and Ronald F. Nacarelli, t/a Nacarelli's General Hauling.

[2] Our recitation of the facts is condensed from the extensive findings of fact (seventeen pages) contained in the excellent opinion of the learned trial judge in this matter, the Honorable ANITA B. BRODY.

Following the Commissioner's decision, Appellants and others brought multiple suits in equity seeking to enjoin the County from · closing the Landfill. Trial of these consolidated actions was commenced on January 8, 1985, with Appellants' case-in-chief starting on January 21, 1985. Two days later, Appellants'. counsel was excused from the proceedings so that he could enter into settlement discussions with the County.

Soon after, a settlement was. reached. The agreement set forth that:

(a) the petitioner-plaintiffs would terminate their participation in the trial of January, 1985.

(b) the petitioner-plaintiffs would withdraw an action brought against Montgomery County and other municipalities which the petitioner-plaintiffs. had filed in the United States District Court for the Eastern District of Pennsylvania, No. 84-6222.

(c) the petitioner-plaintiffs agreed that they would commit all solid waste collected by them to Montgomery County's proposed solid waste recovery facility when that facility becomes available.

(d) the petitioner-plaintiffs would pay a $30.00 per ton tipping fee for all solid waste which they were to be permitted to dump at Montgomery County Landfill No. 2.

(e) The petitioner-plaintiffs would be allowed to deposit solid waste at Montgomery County Landfill No. 2 at 80% of .their 1984 dumping levels, until December 31, 1986, *or until the landfill was closed*. (Emphasis added.)

Appellants at the time they entered into the settlement agreement had knowledge of the County projections regarding the capacity of the Landfill.[3] During

---

[3] The County's environmental consultants in a report of May 4, 1984, estimated that at the then-existing rate of dumping, the

negotiations which led to the settlement the County never represented to Appellants that the Landfill would remain open until 1986, nor were there any representations that the County would use its best efforts to keep the Landfill open. The County did agree, however, to file applications with the Department of Environmental Resources (DER) to amend its permits. These applications would have allowed the County to mound trash to the height of 240 feet, an elevation greater than the 205 feet allowed under the then-existing permits, and to dump solid waste on the ground between the Landfill and the closed Landfill No. 1. Appellants performed their side of the agreement, and so did the County, including the filing of the permit amendment applications.

On July 29, 1985, approximately six months after the settlement, SKB filed an action with the Environmental Hearing Board (EHB) against DER for failure to take certain actions desired by SKB with respect to the Landfill. SKB alleged that the Landfill was contaminating the groundwater with leachate,[4] and that the Landfill was not in compliance with Pennsylvania's environmental laws and regulations. The EHB allowed the County to intervene in SKB's action and defend.

Appellants learned of SKB's actions in August, 1985, but made no attempt to intervene. On October 18, 1985, the EHB approved and entered a consent order, which embodied a settlement worked out between

---

Landfill would have to close on March 31, 1985. A subsequent report of July 31, 1984, stated that if only *contracted* waste were dumped, the Landfill could accept waste until April 1, 1986. This second report was based on the assumption that the County would be permitted to deposit waste at the Landfill until it reached an elevation of 240 feet.

[4] Leachate is the liquid that results when precipitation flows through refuse within the landfill and emerges at the bottom.

DER, SKB and the County. The consent order provided that the Landfill would be closed on December 31, 1985, but the County was allowed whichever came first. The County's second application to deposit waste between the landfills was, however, denied. The consent order made no determination of SKB's allegations regarding the operation of the Landfill.

On October 29, 1985, Appellants filed the present action asserting that the County was guilty of fraud because it "deliberately did not tell [Appellants] about the fact that [the County was] not in compliance with the DER regulations with regard to the closure of the [L]andfill, with regard to the leachate collection control, which should have been in line and in place prior to 1985." Alternatively, Appellants claimed that the County knew nothing of the alleged non-compliance with DER regulations, and therefore, the settlement of Appellant's original action was based on a mutual mistake. After a series of hearings, the trial judge dismissed Appellants' action. This appeal followed.

Appellants first claim of error is that the trial court abused its discretion in refusing to admit statements made by Earl Smith, an employee of the Landfill, to Charles F. Santangelo, one of the Appellants. The law in Pennsylvania is that an agent's statements are admissible as admissions against the agent's principal only if the agent had the authority to make the statements. *DeFrancesco v. Western Pennsylvania Water Co.*, 329 Pa. Superior Ct. 508, 478 A.2d 1295 (1984). This is the traditional rule and is the law of Pennsylvania as articulated by our Supreme Court. *Murray v. Siegal*, 413 Pa. 23, 195 A.2d 790 (1983); *Yubas v. Makransky*, 300 Pa. 507, 150 A. 900 (1930). Appellants acknowledge that they were unable to show that the employee had any authority to make the statements, but urge us to adopt the less restricted rule embodied in Federal Rule of

Evidence 801(D)(2)(d), which allows a vicarious admission if it is "a statement by [the principal's] agent or servant concerning a matter within the scope of his agency or employment made during the existence of the relationship." P.R.E. 802(D)(2)(d).

This argument was made and rejected in *DeFrancesco*, where Judge MONTEMURO stated:

> While the observation that our supreme court has not yet considered a more liberal rule is certainly true, President Judge SPAETH's deduction that this lack of reevaluation emasculates the binding and precedential value of the traditional rule is improper. The reconsideration of established legal principle merely on an attack that a more liberal rule should be applied, renders every established legal principle questionable in undermining the doctrine of *stare decisis*. This Court is powerless to alter the decisional law of our supreme court. Commonwealth v. Butch, 257 Pa. Super. 242, 390 A.2d 803 (1978); Lowery v. Pittsburgh Coal Co., 216 Pa. Super. 362, 268 A.2d 212 (1970).

329 Pa. Superior Ct. at 519-20, 478 A.2d at 1301 (emphasis in original and footnote omitted). We agree with Judge MONTEMURO that this Court is powerless to alter decisions of our Supreme Court, *see Wicks v. Milzoco Builders, Inc.*, 25 Pa. Commonwealth Ct. 340, 360 A.2d 250 (1976), and the argument advanced by Appellants could not and does not persuade us otherwise.[5]

Appellants next argue that the County committed fraud or misrepresentation in failing to tell Appellants that leachate was allegedly contaminating the groundwater, and that the Landfill could be closed because of

---

[5] We explicitly do not pass upon the issue of whether the Pennsylvania Courts should adopt the less restrictive rule or retain the traditional rule.

this problem. We agree with the trial judge that Appellants failed to show any fraud or misrepresentation.

Fraud must be proven by evidence that is clear, precise and convincing. *Snell v. State Examining Board,* 490 Pa. 277, 416 A.2d 468 (1980). The elements of fraud are (1) a misrepreentation; (2) a fraudulent utterance thereof; (3) an intention by the maker that the recipient will act; (4) justifiable reliance by the recipient upon the misrepresentation; and (5) damages to the recipient as the proximate result. *Neuman v. Corn Exchange National Bank & Trust,* 356 Pa. 442, 51 A.2d 759 (1947). The deliberate nondisclosure of a material fact is the same as culpable misrepresentation. *Id.* Even innocent misrepresentations are actionable if they relate to matters material to the transaction involved; while, if the misrepresentation is made knowingly or involves nonprivileged failure to disclose, materiality is not a requisite to the action, *DeJoseph v. Zambelli,* 392 Pa. 24, 139 A.2d 644 (1958), *aff'g on the opinion of the trial court,* 11 D. & C. 2d 447 (1957). A misrepresentation is material when it is of such a character that if it had not been made, the settlement would not have been entered into. *Greenwood v. Kadoich,* 239 Pa. Superior Ct. 372, 357 A.2d 604 (1976).

In this case, Appellants had to show that the County knew that the landfill was shut down because of the groundwater contamination problem. As the trial court explained, leachate in landfills, like brine in oil drilling operations, is an inherent by-product of that type of use, and the major environmental concern is not whether leachate exists, but whether it is dealt with in a manner so as to prevent pollution of the surrounding groundwater. Appellants called Doctor Robert Schoenberger in order to prove that as of January 1985 the County knew or should have known of leachate control problem serious enough to close the Landfill. Dr. Schoenberger

testified, however, that the groundwater degradation complained of could have been caused by factors other than the Landfill, and that the tests showing the degradation were inconsistent and of questionable accuracy. He further testified that the Landfill had never been cited by DER for environmental violations, and that the Landfill was never in danger of closure due to water contamination or leachate problems. Indeed, Dr. Schoenberger testified that groundwater degradation problems can be handled in a number of ways, and does not necessitate the closing of the landfill. This last point was corroborated by the testimony of DER officer Wayne Lynn who testified that DER and the County had corresponded and cooperated with respect to water treatment at the Landfill and that DER saw no need to close the Landfill. Appellants simply failed to make out any case for fraud or misrepresentation.

Appellants also argue that the original settlement was based on a mutual mistake, *i.e.*, that neither side knew of a groundwater contamination problem serious enough to close the Landfill. As was just demonstrated in the previous paragraph, Appellants failed to prove that the Landfill was closed for that reason, and, accordingly, this argument need be addressed no further.[6]

Affirmed.

## ORDER

The order of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby affirmed.

---

[6] There are substantial questions raised as to what relief, if any, Appellants would have been entitled to had they prevailed. Given our disposition of this case, we do not pass on these issues.