DUQUESNE LIGHT COMPANY

v.

WOODLAND HILLS SCHOOL
DISTRICT

v.

MICHAEL BAKER, JR., INC., Coco
Brothers Construction Company
and Carl G. Baker

v.

WAYNE CROUSE, INC.

Appeal of Carl G. BAKER, Appellant.

DUQUESNE LIGHT COMPANY

v.

WOODLAND HILLS SCHOOL
DISTRICT

v.

MICHAEL BAKER, JR., INC., Coco
Brothers Construction Company
and Carl G. Baker

v.

WAYNE CROUSE, INC.

Appeal of Michael BAKER,
Jr., Inc., Appellant.

DUQUESNE LIGHT COMPANY

v.

MICHAEL BAKER, JR., INC., Coco
Brothers Construction Company
and Carl G. Baker.

v.

WOODLAND HILLS SCHOOL
DISTRICT

Appeal of Michael BAKER,
Jr., Inc., Appellant.

DUQUESNE LIGHT COMPANY

v.

MICHAEL BAKER, JR., INC., Coco
Brothers Construction Company
and Carl G. Baker,

v.

WOODLAND HILLS SCHOOL
DISTRICT

Appeal of Carl G. BAKER, Appellant.

Commonwealth Court of Pennsylvania.

Argued June 5, 1997.
Decided Sept. 12, 1997.

Mark J. Gesk, Pittsburgh, for appellant, Carl Baker.

Richard F. Rinaldo, Pittsburgh, for appellant, Michael Baker, Jr., Inc.

Steven Petrikis, Pittsburgh, for appellee, Duquesne Light Company.

Before McGINLEY and KELLEY, JJ., and RODGERS, Senior Judge.

KELLEY, Judge.

In these consolidated appeals,[1] Michael Baker, Jr., Inc. (Michael Baker) and Carl G. Baker (Carl Baker) are challenging several orders of the Court of Common Pleas of Allegheny County (trial court) in a dispute involving Duquesne Light Company (Duquesne Light), Woodland Hills School District (School District) and Coco Brothers Construction Company (Coco Brothers).

## I. FACTS & PROCEDURAL HISTORY

The subject of this case is a landslide which occurred on hillside property belonging to the School District on February 22, 1990. The 1990 landslide caused extensive damage to the School District's property and to Duquesne Light's electrical substation located at the base of the hillside.

In December of 1972, an agreement to construct a school was entered into between the School District[2] and three design professionals: Michael Baker, the engineer; Carl Baker, the architect; and Coco Brothers, the general contractor. The site of the proposed school structure was located on a hill containing numerous mined-out coal seams. As part of the geotechnical design, part of the hilltop was to be cut and the fill was to be used to form an additional embankment in order to enlarge the surface area for athletic and recreational utilization.

Excavation and fill work on the embankment began in August 1976. On April 1, 1977, a landslide occurred. Construction resumed with no change in the design drawings or specifications. As part of the embankment construction, a pressurized water line was installed from a pump station at the bottom of the hill to transport water up to the school. The water line was designed by Gumpf Engineering and was installed by Wayne Crouse, Inc. The construction of the embankment was completed in July 1977.

On February 22, 1990, a second landslide occurred on the hillside, which is the subject of this case. The 1990 landslide occurred in a location different from the 1977 landslide.

On October 15, 1991, Duquesne Light commenced an action against the School District alleging negligence in the creation and/or maintenance of the hillside. On February 20, 1992, Duquesne Light commenced a separate action against Michael Baker, Carl Baker and Coco Brothers, alleging negligence in the construction of the embankment. The actions were consolidated.

On December 17, 1992, the School District filed a complaint to join additional defendants against Michael Baker, Carl Baker and Coco Brothers for damage sustained in the 1990 landslide. Michael Baker filed a motion for summary judgment asserting the School District's claim was time-barred since the embankment was created in 1977. The motion was denied on the doctrine of *nullum tempus*.

The case was assigned to the trial court for jury trial on May 1, 1995. Prior to the commencement of the trial, settlements were reached between Duquesne Light and the School District, Coco Brothers, and Wayne Crouse, Inc.,[3] and between the School District and Coco Brothers. The liability and damage segments of the trial were bifurcated. The trial began on May 10, 1995.

On June 12, 1995, the jury returned a verdict on liability in favor of Duquesne Light and the School District and against Michael Baker and Carl Baker. On June 22, 1995, the jury returned a verdict on damages in favor of Duquesne Light in the amount of $468,500 and the School District in the

---

1. These appeals were consolidated by order of this court dated August 29, 1996.

2. Swissvale Area School District, predecessor to the Woodland Hills School District, entered into the agreement.

3. Wayne Crouse, Inc. was dismissed by the trial court as a party defendant prior to the trial.

amount of $1,044,486. Duquesne Light and the School District filed motions for delay damages. Molded verdicts were entered in favor of Duquesne Light in the amount of $549,434.98 and the School District in the amount of $1,224,924.53 on July 18, 1995.

Timely post-trial motions were filed by both Michael Baker and Carl Baker. In March 1996, Duquesne Light, the School District and Coco Brothers filed praecipe for entry of judgment pursuant to Pa.R.C.P. No. 227.4(1)(b). Judgment was entered by the prothonotary denying all post-trial motions. Michael Baker and Carl Baker filed petitions to open these judgments. By order of court entered March 14, 1996, the trial court denied all petitions to open judgment. These appeals followed.

## II. PROCEDURAL ERRORS

Before this court are 14 appeals: Two appeals regarding denial of motions for summary judgment, four appeals regarding denial of petitions to open judgment, and eight appeals regarding final judgments. Before reaching the merits of these appeals, we must first address the propriety of these 14 appeals.

▉ The two appeals[4] filed by Michael Baker from the order entered January 26, 1995 denying his motions for summary judgment are inappropriate. It is well settled, subject only to certain exceptions not applicable here,[5] that only final orders may be appealed. Pa.R.A.P. 341; *Noll v. Harrisburg Area YMCA*, 537 Pa. 274, 643 A.2d 81 (1994). A final order is defined as any order that "disposes of all claims or of all parties." Pa.R.A.P. 341. An order denying a motion for summary judgment is interlocutory and is not appealable until a final order is entered in the cause. *Conrail v. Shirk*, 143 Pa. Cmwlth. 422, 599 A.2d 262 (1991); *Hammond v. Thompson*, 122 Pa.Cmwlth. 223, 551 A.2d 667 (1988).

In this case, the order denying the motions for summary judgment is a nonappealable interlocutory order. *See* Pa.R.A.P. 311. Accordingly, these appeals are quashed. We note, however, that the issues raised therein are effectively subsumed in the appeals from the final judgments.

▉ The four appeals[6] filed by Michael Baker and Carl Baker from the order entered on March 14, 1996 denying their petitions to open judgment entered in favor of Coco Brothers are also inappropriate. Petitions to open judgment are typically filed with respect to judgments that have been entered upon default or admission. *See* Pa. R.C.P. No. 1037; *Penn Piping, Inc. v. Insurance Company of North America*, 529 Pa. 350, 603 A.2d 1006 (1992) (judgment of non pros entered after a period of inactivity in excess of two years); *Fessler v. Hannagan*, 144 Pa.Cmwlth. 274, 601 A.2d 462 (1991), *petition for allowance of appeal denied*, 530 Pa. 647, 607 A.2d 257 (1992) (default judgment). In such cases, the entry of judgment is ministerial in nature. *See* Darlington, McKeon, Schuckers, & Brown, 1 Pennsylvania Appellate Practice 2d at § 311:11 (1996).

In the present case, Michael Baker and Carl Baker, following an unfavorable jury verdict, filed motions for post-trial relief. The trial court did not enter an order disposing of all motions within 120 days. Pursuant to Pa.R.C.P. No. 227.4(1)(b), the prothonotary entered judgments upon the jury's verdict. Specifically, the prothonotary entered final judgments on March 7, 1995 in favor of Coco Brothers and against all other parties.

Unlike a judgment entered upon default or admission, this judgment reflected the jury's verdict on the merits of the complaint. The jury, in response to Special Interrogatory No. 3, stated that Coco Brothers' negligence was not a substantial factor in bringing about the harm to Duquesne Light. Reproduced Record (R.) at 1345a. Therefore, the peti-

---

4. Appeal Nos. 785 C.D. 96 and 778 C.D. 96.

5. *See, e.g.,* Pa.R.A.P. 311 (interlocutory appeals as of right); Pa.R.A.P. 312 (interlocutory appeals by permission); and Pa.R.A.P. 313 (collateral appeals).

6. Appeal Nos. 877 C.D. 96, 878 C.D. 96, 879 C.D. 96 and 880 C.D. 96.

tions to open judgment and the appeals therefrom were not proper.

Instead, an appeal should have been taken from the judgments entered by the prothonotary on March 7, 1995. However, Michael Baker and Carl Baker only filed appeals with regard to the denial of their petitions to open judgment and did not file appeals from the final judgments. Thus, no claims against Coco Brothers have been preserved for appellate review. As a result, Coco Brothers is no longer a proper party to this action. Accordingly, these appeals are quashed, and Coco Brothers is dismissed as a party in this action.

The remaining eight appeals[7] from the final judgments entered in favor of Duquesne Light and the School District on March 1, 1997 are proper.[8] Because these appeals are from the final judgments, all issues raised by Michael Baker and Carl Baker, including issues raised in the quashed appeals regarding the motions for summary judgment, are before this court for review.

### III. ISSUES

The following issues are raised in this appeal:

1. Whether the new Pa.R.C.P. 227.4(1)(b) precludes a trial court from compliance with Pa.R.A.P.1925(a).

2. Whether the trial court erred in issuing a binding jury instruction requiring the jury to find one or more defendants negligent, despite evidence that natural causes or the conduct of third parties may have caused the landslide.

3. Whether the trial court may refuse to permit an expert witness to testify at trial on the grounds that the expert's report was "speculative" when the report expressly stated that its conclusions as to causation were drawn "with reasonable engineering certainty."

4. Whether the trial court may admit evidence of a duty to inspect the construction of a hillside embankment, where no such

duty existed in the agreement between the parties.

5. Whether the trial court must exclude expert reports from evidence and decline to permit other witnesses to testify about the contents of the expert reports because the expert is deceased and thus unavailable to testify at trial.

6. Whether the trial court must charge a jury that the School District's destruction of a failed water line constituted spoliation of evidence.

7. Whether the statute of limitations bars certain claims of the School District, despite the doctrine of *nullum tempus*.

8. Whether the trial court may preclude evidence of actual loss and require the jury to use restoration cost as the measure of damages.

9. Whether the trial court may refuse to charge on assumption of risk despite evidence that the School District knew since 1977 of a landslide risk and voluntarily chose to proceed with the construction of the embankment.

10. Whether the trial court may admit excerpts from a deposition regarding a joint venture as evidence and classify the same as binding admissions.

11. Whether the trial court erred in granting the motion in limine of the School District, excluding any testimony regarding the observations, reference, or arguments of the School District's full-time project representative who died prior to trial.

### IV. DISCUSSION

#### 1. Pa.R.C.P. No. 227.4

■ The issue of whether Pa.R.C.P. No. 227.4 eliminates the duty of a trial judge to file an opinion in support of an order pursuant to Pa.R.A.P.1925(a) is a case of first impression in this court. Rule 227.4 was amended effective January 1, 1996 and now states:

---

7. Appeal Nos. 776 C.D. 96, 777 C.D. 96, 779 C.D. 96, 780 C.D. 96, 781 C.D. 96, 782 C.D. 96, 783 C.D. 96 and 784 C.D. 96.

8. We note, however, that Michael Baker and Carl Baker could have filed jointly pursuant to Pa. R.A.P. 512, but what they did was not improper.

In addition to the provision of any Rule of Civil Procedure or Act of Assembly authorizing the prothonotary to enter judgment upon praecipe of a party, the prothonotary shall, upon praecipe of a party:

(1) enter judgment upon the verdict of a jury or the decision of a judge following a trial without jury, or enter the decree nisi as the final decree, if

(a) no timely post-trial motion is filed; or

(b) one or more timely post-trial motions are filed and the court does not enter an order disposing of all motions within one hundred twenty days after the filing of the first motion. A judgment entered pursuant to this subparagraph shall be final as to all parties and all issues and shall not be subject to reconsideration. . . .

Pa.R.C.P. No. 227.4. The trial court contends that this rule eliminates the trial court's duty to issue an opinion pursuant to Pa.R.A.P.1925(a). We strongly disagree.

The Pennsylvania Rules of Appellate Procedure require a trial court, upon notice of appeal from post-trial motions or other orders, to file an opinion detailing the reasons for the order or for the rulings or matters complained of, or to specify in writing the place in the record where such reasons may be found. Pa.R.A.P.1925(a). The purpose of Rule 1925(a) is to give the appellate court a reasoned basis for the trial court's decision and to require a trial judge to consider thoroughly decisions regarding post-trial motions. *Commonwealth v. Pate*, 421 Pa. Superior Ct. 122, 617 A.2d 754 (1992), *petition for allowance of appeal denied*, 535 Pa. 656, 634 A.2d 219 (1993). While Rule 227.4 authorizes the prothonotary to enter judgments upon praecipe, it clearly does not alleviate the duty of the trial court to issue an opinion pursuant to the Rules of Appellate Procedure.

Ordinarily, the remedy for non-compliance with the Pa.R.A.P.1925(a) is a remand to the trial court with directions that an opinion be prepared and returned to the appellate court. *Pate.* Nevertheless, the record in this particular case is sufficient for appellate review and in the interests of judicial economy, we shall address the merits of Michael Baker's

and Carl Baker's appeals. *See Crum v. F.L. Shaffer Company*, 693 A.2d 984 (Pa.Super.1997); *Commonwealth v. Leighty*, 693 A.2d 1324 (Pa.Super.1997). In the future, however, we will remand for compliance with Pa.R.A.P.1925(a) in order to have the benefit of the trial court's opinion.

## 2. BINDING INSTRUCTION OF NEGLIGENCE

Michael Baker and Carl Baker contend that the trial court committed reversible error by issuing a binding instruction requiring the jury to find one or more defendants negligent, despite evidence that natural causes or conduct of third parties may have caused the landslide. We agree.

■ A trial judge's instruction to the jury is a critical component of the judicial system for it guides the jury in making a just and proper decision. Therefore, the jury instructions must accurately inform the jury of the law applicable to the case. *See Commonwealth v. Prosdocimo*, 525 Pa. 147, 578 A.2d 1273 (1990). Where there is an error of law or an abuse of discretion in the trial court's instructions to the jury, there is reversible error. *Prosdocimo.*

■ Before the issuance of a binding instruction, a court must consider the facts and evidence in the light most favorable to the opposing party, giving the benefit of all reasonable inferences therefrom. *McElhinny v. Iliff*, 436 Pa. 506, 260 A.2d 739 (1970). "Binding instructions may not be given if there is a question of fact properly submissible to the jury." *Dible v. Vagley*, 417 Pa. Superior Ct. 302, 307, 612 A.2d 493, 495 (1992), *petition for allowance of appeal denied*, 535 Pa. 619, 629 A.2d 1380 (1993) (quoting *Hogan v. Bryn Mawr Hospital*, 250 Pa. Superior Ct. 109, 116, 378 A.2d 477, 481 (1977)). Where there is any evidence which alone would justify an inference of the disputed fact, it must go to the jury, no matter how strong or persuasive may be the countervailing proof. *McElhinny.*

■ The issue of whether a party is negligent is appropriate for the jury to determine. *Id.* In a negligence action, the mere happening of an accident does not establish

the negligence of the defendant. *Id.; Lanni v. Pennsylvania Railroad Company,* 371 Pa. 106, 88 A.2d 887 (1952). Negligence must be proved unless the rule of *res ipsa loquitur* applies. *Henderson v. National Drug Company,* 343 Pa. 601, 23 A.2d 743 (1942).

■ Here, the trial court mandated the jury "to find that one or more of [the] defendants was negligent in that they breached a duty of due care" to Duquesne Light which "brought about the injury." R. 1325a, 1327a. Based upon our examination of the record, the trial court could not properly conclude as a matter of law that the landslide must have been caused by the negligence of one or more defendants. During trial, Michael Baker and Carl Baker presented evidence which would tend to establish causes for the landslide that did not involve their negligence, including evidence suggesting that a defect in the water line or negligence of a third party may have caused the landslide. R. 776a–77a, 783a, 960a–61a, 963a–64a, 971a–73a, 1090a–91a, 1097a, 1118a, 1294a–96a, 1769a. The evidence was sufficient to carry the issue of negligence to the jury.

The trial court was required to view the facts in the light most favorable to the Bakers and to consider all favorable inferences that could be drawn therefrom before issuing a binding instruction. It is clear from a review of the record that the trial court failed to apply this standard. The binding instruction issued by the trial court was prejudicial to the defense. Accordingly, it was error for the trial court to instruct the jurors that they must find one or more of defendants liable.

### 3. EXCLUSION OF EXPERT WITNESS TESTIMONY

■ Michael Baker and Carl Baker contend that the trial court erred in refusing to permit Dr. James Hamel to testify because Dr. Hamel was prepared to testify with reasonable certainty that the water line caused the landslide. We agree.

■ The primary purpose of expert testimony is to assist the trier of fact in understanding complicated matters. *Panitz v. Behrend,* 429 Pa. Superior Ct. 273, 632

A.2d 562 (1993), *petition for allowance of appeal denied,* 539 Pa. 694, 653 A.2d 1232 (1994). In cases where expert testimony is necessary, the expert must testify that his/her opinion is made with a reasonable degree of certainty. *McMahon v. Young,* 442 Pa. 484, 276 A.2d 534 (1971). Speculative testimony or testimony made without reasonable certainty does not aid the trier of fact and should be stricken. *Id.*

■ The admission of expert testimony is within the discretion of the trial court. *Bob Wark's Arco v. Department of Transportation, Bureau of Traffic Safety,* 71 Pa. Cmwlth. 644, 455 A.2d 770 (1983). However, "the limit of that discretion is exceeded where the ruling prohibits the introduction of evidence that is proper and essential to a party's case." *Id.* 455 A.2d at 772. Expert opinion as to the cause of an accident is always admissible where the facts depend upon circumstantial rather than direct evidence. *Foley v. Pittsburgh–Des Moines Company,* 363 Pa. 1, 68 A.2d 517 (1949). The question of whether the expert's opinion is convincing or credible is a matter for the jury. *Id.*

In the instant case, the matters surrounding the cause of the landslide were scientific and complex.[9] A lay jury could not have been expected to know or fully appreciate the laws of science involved in the landslide. Therefore, expert testimony was necessary to aid the trier of fact. For this purpose, Michael Baker retained Dr. Hamel, a geotechnical expert, to testify regarding the cause of the 1990 landslide.

Dr. Hamel investigated the 1990 landslide and documented his findings in a report which was filed and served upon the parties as an attachment to Michael Baker's pretrial statement. In the report, Dr. Hamel stated with reasonable engineering certainty that "the 1990 slide was initiated by a rupture of the water line in the vicinity of the embankment toe but actually caused by absence of a proper embankment toe key." R. 320a; 322a. The report also stated that due to the limited information available it was "impossible to determine whether the water line

---

9. The case was declared to be a complex case by order of the trial court dated October 7, 1994.

failed as a result of ground movements associated with the improperly constructed embankment or if the water line failed as a result of some other cause(s), *e.g.,* mechanical problems with the pumping systems, metal fatigue, pipe or joint defects." R. 320a. Based upon the latter statement, Duquesne Light objected to Dr. Hamel's anticipated testimony on the grounds that his testimony was inherently speculative. The objection was sustained and the Dr. Hamel's testimony was excluded.

The trial court excluded Dr. Hamel's testimony because of his inability to conclusively determine why the water line failed. Dr. Hamel stated in his report that he was unable to make such a determination because he never had the opportunity to test or inspect the water line because it was destroyed by the School District. R. 319a, 1070a. Therefore, Dr. Hamel should have been permitted to explain why such a conclusive determination on the water line failure was now impossible to make.

While Dr. Hamel was not prepared to testify on what caused the water line to rupture, he was prepared to render an opinion on the cause of the landslide. As evidenced by his report, Dr. Hamel was prepared to testify as to causation of the landslide with reasonable certainty. R. 322a. This testimony should not have been excluded on three grounds.

First, Dr. Hamel's opinion on the cause of the landslide was made with a reasonable degree of certainty. Therefore, by definition, it is not speculative. Whether or not his expert opinion is credible or convincing is an appropriate question for the jury.

Second, there is no direct evidence as to what caused the landslide. As a result, the facts depend upon circumstantial rather than direct evidence. Therefore, circumstantial evidence in the form of expert opinion testimony was admissible.

Third, Dr. Hamel's testimony was clearly essential to the defense of Michael Baker and Carl Baker. Dr. Hamel was the defense's only expert witness able to testify on the issue of causation. Dr. Hamel's expert opinion supports the defense that the landslide was not the result of design negligence.

The exclusion of Dr. Hamel's testimony was clearly prejudicial to the defense. Accordingly, the trial court committed reversible error by excluding Dr. Hamel's testimony.

## 4. DUTY TO INSPECT

Michael Baker contends the trial court erred in admitting evidence of an alleged duty to inspect or observe the construction of the hillside embankment, because no such duty existed in the agreement. We disagree.

 Michael Baker, during argument regarding a motion in limine, acknowledged that a duty to inspect the reconstruction of the embankment arose after the 1977 landslide. R. 595a–96a. Therefore, he was precluded from arguing that no such duty existed. Accordingly, the trial court did not err by admitting evidence of this duty.

## 5. ADMISSIBILITY OF BUSINESS RECORDS

Michael Baker and Carl Baker contend that the trial court committed reversible error by admitting expert Eugene Hannigan's report into evidence. Since Hannigan had died prior to the trial, the Bakers contend that his report constitutes inadmissible hearsay.

It is well established that hearsay is inadmissible as evidence, unless it falls within a recognized exception of the hearsay rule. *Commonwealth v. Smith,* 523 Pa. 577, 568 A.2d 600 (1989). A report prepared by an expert who is not called as a witness is hearsay. *Pompa v. Hojnacki,* 445 Pa. 42, 47, 281 A.2d 886 (1971). However, a report which is prepared as a business record is an exception to the hearsay rule and is generally admissible. *Williams v. McClain,* 513 Pa. 300, 520 A.2d 1374 (1987).

 In Pennsylvania, the admissibility of a business record is governed by 42 Pa.C.S. § 6108 which provides:

A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the

time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission. 42 Pa.C.S. § 6108(b). The fact that the expert who prepared the report is unavailable at trial does not render a business record inadmissible, as long as an authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of reliability. *In re Estate of Indyk*, 488 Pa. 567, 413 A.2d 371 (1979). However, a record in the nature of an expert opinion, diagnosis or conclusion is generally not admissible as a business record unless the expert rendering the opinion is available for cross-examination. *Williams; Ganster v. Western Pennsylvania Water Company*, 349 Pa. Superior Ct. 561, 504 A.2d 186 (1985).

In *Ganster*, the defendant produced business records which showed that one of its employees procured a water sample from a property, took the sample to the lab for analysis and made the notation "not our water." *Id.* at 564, 504 A.2d at 188. The Superior Court analogized the case to hospital records cases where the business records exception can be utilized to show facts of hospitalization, treatment prescribed and symptoms complained of, but not for the medical opinions or diagnosis contained therein. *Id.* at 570, 504 A.2d at 191. On this basis, the court held that the trial court properly admitted the report as a business record to show the work done by the employee and that the water sample was taken from the property. *Id.* at 573, 504 A.2d at 192. However, the court held that the employee's opinion that the water was not from the defendant was an expert opinion which required his availability for cross-examination in order for the statement to be admissible under the business records exception. *Id.* at 574, 504 A.2d at 193.

■ Whether or not a document should be admitted under the business record exception is within the discretionary power of the trial court provided such is exercised within the bounds of section 6108. *Commonwealth v. Corradino*, 403 Pa. Superior Ct. 251, 588 A.2d 936 (1991). A trial court's evidentiary rulings may be reversed on appeal upon a showing of an error of law or clear abuse of discretion. *Burkholz v. Department of Transportation*, 667 A.2d 513 (Pa.Cmwlth.1995).

■ In the present case, Eugene Hannigan Consulting Engineers was hired by McGowan–Stauffer, the project's excavation and fill subcontractor, to analyze the embankments following the April 1977 landslide. In the report, Hannigan documented his findings and observations of the embankment test pits. R. 1514a–17a. The report also contained Hannigan's recommendations on what to do with the partially-completed embankments following the 1977 landslide. R. 1514a–17a. Hannigan died and was not available to testify at trial. The trial court admitted Hannigan's report under the business record exception.

To the extent that the report contained factual data from Hannigan's examination of the embankment, the trial court properly admitted Hannigan's report as a business record. This portion of the report recorded Hannigan's observations on the condition of the embankment soil shortly after the 1977 landslide. R. 1514a–17a. The report was authenticated as a business record by William Meszak, President of Eugene Hannigan Engineering, who testified concerning the identity of the report, when it was made, and how the report was maintained. R. 807a–09a. This testimony provided a sufficient indication of the reliability of the report to warrant its admission.

However, the trial court erred in admitting the portion of Hannigan's report which contained recommendations regarding the necessity of drains being installed in the embankment. Hannigan's report states: "It is our opinion that subsurface drainage of the fill embankment is critical . . . ." and details the reasons why. R. 1516a. This portion of the report is clearly an expert opinion requiring Hannigan's availability for cross-examination to warrant admission. Since Hannigan died prior to the trial and was unavailable to testify, this portion of Hannigan's report is inadmissible hearsay, not within the business records exception. Ac-

cordingly, the trial court's admission of Hannigan's report is affirmed in part and reversed in part.

Michael Baker and Carl Baker also assert that the trial court erred in allowing Duquesne Light's experts to testify as to information contained in Hannigan's reports. We disagree.

 Pennsylvania courts recognize an exception to the hearsay exclusionary rule for reports on which experts reasonably rely in reaching their professional conclusions. *Primavera v. Celotex Corporation,* 415 Pa. Superior Ct. 41, 50, 608 A.2d 515, 518 (1992), *petition for allowance of appeal denied,* 533 Pa. 641, 622 A.2d 1374 (1993). Experts are permitted to express opinions based upon reports, not in evidence, provided that such reports are of a type customarily relied upon by experts in the field in making professional judgments. *Id.* at 50, 608 A.2d at 518–19. However, an expert is not permitted to "repeat another's opinion or data without bringing to bear on it his own expertise and judgment." *Id.* at 52, 608 A.2d at 521.

 Hannigan's report pertaining to the soil condition is the type of report upon which experts in the field would reasonably rely in making a professional judgment. As such, the report may be utilized by experts in rendering professional opinions. Accordingly, the trial court did not err in allowing Duquesne Light's experts to rely and testify on this report.

### 6. SPOLIATION OF EVIDENCE

Michael Baker contends that the trial court erred in refusing to charge the jury that the School District's disposal of the water line created an adverse inference because it constituted "spoliation of evidence." We agree.

 The appellate role of this court is to determine whether the refusal of requested jury instructions has caused prejudicial error. *Musnuff v. City of Philadelphia,* 163 Pa.Cmwlth. 120, 639 A.2d 1322 (1994). An error in refusing requested jury instructions is harmless if not prejudicial. *Id.* 639 A.2d at 1323. However, where such a refusal is prejudicial, there is reversible error. *Id.*

 Under Pennsylvania law, a party cannot benefit from its own withholding or spoliation of evidence. *McHugh v. McHugh,* 186 Pa. 197, 40 A. 410 (1898). Contrary to the position of the School District, the doctrine of "spoliation of evidence" is not restricted to product liability cases. *Id.* At least since the early 19th century, Pennsylvania courts have admitted evidence tending to show that an opposing party destroyed evidence relevant to the dispute being litigated in a variety of cases. *Id.; See* 2 Wigmore on Evidence § 291 (Chadbourn rev. 1979).

 The doctrine of spoliation attempts to compensate those whose legal rights are impaired by the destruction of evidence by creating an adverse inference against the party responsible for the destruction. The doctrine permits a jury to infer that the "spoiled" evidence would have been unfavorable to the position of the spoliator. *McHugh.* In *McHugh,* the Supreme Court stated:

> The spoliation of papers and the destruction or withholding of evidence which a party ought to produce gives rise to a presumption unfavorable to him, as his conduct may properly be attributed to his supposed knowledge that the truth would operate against him. This principle has been applied in a great variety of cases, and is now so well established that it is unnecessary to do more than state it.

*McHugh,* 186 Pa. at 201, 40 A. at 411. So where evidence has been destroyed, referral of the spoliation issue to a jury with accompanying instructions is the proper and advisable course of action. *McHugh; Wills v. Hardcastle,* 19 Pa. Superior Ct. 525 (1902) (both holding that an aggrieved party was entitled to presumption in its favor if the jury found spoliation).

 In the instant case, the School District began to investigate the cause of the February 1990 landslide in April of 1990. R. 1027a. The School District hired R. Gary Garvin, a geotechnical expert, to investigate and evaluate the landslide. R. 1010a. In his report of July 16, 1990, Garvin advised the School District that he could not determine "whether water leaking from the line precip-

itated the landslide, or whether earth movements caused the failure of the water line" as an evaluation of the water line design and installation was beyond the scope of his expertise and services R. 1539a. Clearly, this statement as to the cause of the landslide should have put the School District on notice that the water line was relevant evidence.

Duquesne Light commenced its action against the School District in October 1991 for negligence in the creation and/or maintenance of the hillside and the School District filed cross claim against Michael Baker and Carl Baker in December 1992. With litigation pending, the School District, nevertheless, disposed of the water line as part of its clean up of the landslide area. R. 1068a–71a. The School District never notified any parties to the suit of the disposal. As a result, Michael Baker did not have an opportunity to inspect or test the water line to determine the cause of the rupture.

The trial court's refusal to instruct the jury that it could draw an inference that the water line would have been unfavorable to the position of the School District was prejudicial to Michael Baker and thwarted the purpose of the spoliation doctrine. The water line was material evidence to the defense. Without access to the water line the defense was prevented from substantiating its claims that a pipe defect in the water line or some cause unrelated to the design caused the landslide.

The consequences suffered by Michael Baker as a result of the disposal of the water line clearly required the trial court, in this instance, to instruct the jury that an adverse inference may be implied against the School District if the jury found spoliation. Accordingly, the trial court's refusal to instruct the jury that it could infer that the "spoiled" evidence would have been unfavorable to the position of the School District constituted an abuse of discretion and prejudicial error.

### 7. NULLUM TEMPUS

Michael Baker argues that the trial court erred in denying his motion for summary judgment and ruling, as a matter of law, that the statute of limitations did not bar the School District's claims based on the doctrine of *nullum tempus*. We disagree.

 Our scope of review of a trial court's order denying summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *DiMino v. Borough of Pottstown*, 142 Pa.Cmwlth. 683, 598 A.2d 357 (1991), *petition for allowance of appeal denied*, 533 Pa. 602, 617 A.2d 1276 (1992).

 *Nullum tempus occurrit regi* ("time does not run against the king") permits a political subdivision of the Commonwealth to circumvent the applicable statute of limitations. *Altoona Area School District v. Campbell*, 152 Pa.Cmwlth. 131, 618 A.2d 1129 (1992), *petition for allowance of appeal denied*, 535 Pa. 639, 631 A.2d 1010 (1993). In *Altoona*, the court held:

> [T]he privilege of *nullum tempus* does not, in the absence of express provision, extend to municipalities, counties or other political subdivisions *unless such political subdivisions are seeking to enforce strictly public rights*, that is, when the cause of action accrues to them in their governmental capacity and the suit is brought to enforce an obligation imposed by law as distinguished from one arising out of an agreement voluntarily entered into by the defendant.

*Id.* 618 A.2d at 1132 (emphasis added).

 A school district is a political subdivision of the Commonwealth. *School District of Philadelphia v. Twer*, 498 Pa. 429, 447 A.2d 222 (1982). As such, a school district may invoke the doctrine of *nullum tempus*. However, in order to defeat the applicable statute of limitations, the right sought to be enforced must be strictly public as well as imposed by law. *Altoona; Mount Lebanon School District v. W.R. Grace & Company*, 414 Pa. Superior Ct. 455, 607 A.2d 756 (1992).

In the present case, Michael Baker argues that the School District was not obligated by law to construct the playfield, and is, therefore, only seeking to enforce rights arising out of an agreement voluntarily entered into by the School District. In support of his contention, Baker relies on *Altoona*. However, the factual situation in *Altoona* is distinguishable from the case at hand.

In *Altoona*, the school district constructed a public library pursuant to section 418 of the Library Code [10] and section 5–502 of the Public School Code of 1949 [11] (School Code), which provides that a school district *may* establish a library for public use. The school district was not obligated by law to construct a public library to accommodate all residents of the district. *Id.* Therefore, the court concluded that, under this factual situation, the doctrine of *nullum tempus* did not apply. *Id.*

■ In the present case, the School District constructed an athletic track and field pursuant to section 7–701 and 7–702 of the School Code. Section 7–701 imposes a duty upon the school board to provide "the necessary grounds and suitable school buildings to accommodate" all school age children. 24 P.S. § 7–701. Section 7–702 of the School Code provides that "no new school building shall be erected without a proper playground being provided therefor." 24 P.S. § 7–702. Additionally, section 171.13 of the Pennsylvania Code, which is under chapter 171 entitled "Schools," states: "The buildings, grounds, play area equipment and appurtenances shall be constructed and maintained to minimize health and accident hazards." 25 Pa.Code § 171.13.

The School District's athletic track and field were part of the entire school construction project. The superintendent of the School District testified the track and field were created to meet the mandated needs of the School District's students. R. 975a–78a. The superintendent testified that the decision to build the new school was pursuant to the state law which required the School District to provide suitable facilities for the children. R. 975a. He further testified that the track and field were used by the students for state-mandated gym classes and for recreational and extracurricular activities. R. 977a–78a.

The School District, in contracting to construct the hillside embankment for the track and field, was clearly acting in accordance with obligations imposed by law. Therefore, the School District was permitted to invoke

the doctrine of *nullum tempus*. Accordingly, the trial court did not err in denying Baker's motion for summary judgment and ruling that the statute of limitations did not bar the School District's claims.

## 8. MEASURE OF DAMAGES

Michael Baker and Carl Baker contend that the trial court erred in excluding evidence of actual loss incurred by the School District and in directing the jury to use the cost of restoration as the method of calculating damages. We agree.

■ The measure of damages for injury to real property depends upon the permanency of the injury. *Rabe v. Shoenberger Coal Company*, 213 Pa. 252, 62 A. 854 (1906); *Lobozzo v. Adam Eidemiller, Inc.*, 437 Pa. 360, 263 A.2d 432 (1970). In *Rabe*, the Supreme Court concluded that where injury to real property is permanent, the proper measure of damages is the diminution in the market value of the property. However, where an injury is not permanent, the cost of repair may be recoverable provided that such cost is shown to be "reasonable." *Id.* at 258, 62 A. at 855. Where the cost of repairing the injury is greater than the diminution in market value, the *Rabe* case clearly provides that diminution in market value is "always the true measure of damages." *Id.*

The interpretation of *Rabe* has been the subject of considerable controversy over the years. In *Art Club of Philadelphia v. Heyman & Goodman*, 325 Pa. 587, 592, 190 A. 922, 924 (1937), the Supreme Court held that "for damage to realty a plaintiff may recover for remediable injury the cost of repairing it, or depreciation caused by it, whichever be lower, and for permanent damage the depreciation in market value of the realty." However, in *Lobozzo*, the Supreme Court noted that the reading given *Rabe* by *Art Club* was erroneous and held that the measure of damages is always the cost of repairs where the injury is reparable, unless such cost is equal to or exceeds the value of the injured building. *Id.* at 360 n. 6, 263 A.2d 432 n. 6. The Superior Court in *Kirkbride v. Lisbon Con-*

**10.** Act of June 14, 1961, P.L. *as amended*, 24 P.S. § 4418.

**11.** Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101—27–2702.

*tractors, Inc.,* 385 Pa. Superior Ct. 292, 300, 560 A.2d 809, 812 (1989), following *Lobozzo,* took the law one step further and concluded that wherever land can be restored, the cost of restoration is the appropriate measure of damages "without regard to the diminution in value of the property."

There has also been considerable debate in the courts over the issue of permanence. In *Kirkbride,* the Superior Court defined permanent injury as one which is "unequivocally beyond repair." *Id.* at 299, 560 A.2d at 812. However, other courts have suggested that the issue of permanence depends largely upon whether the cost of repair would be unfair or inappropriate. *See Wade v. S.J. Groves & Sons Co.,* 283 Pa. Superior Ct. 464, 424 A.2d 902 (1981); *In re Paoli R.R. Yard PCB Litigation,* 35 F.3d 717 (3rd Cir.1994), *cert. denied sub nom., General Electric Co. v. Ingram,* 513 U.S. 1190, 115 S.Ct. 1253, 131 L.Ed.2d 134 (1995).

The Supreme Court in *Lobozzo* did not define "permanent injury." However, the Court stated that the proper measure of damages for permanent injury to property is the lower of the cost of repairs or the diminution in value of property. *Id.* If such a comparison between the cost of repairs and the diminution in value can be made, it is clear that "permanent" in this context does not mean "unequivocally beyond repair."

■ Under Pennsylvania law, "the purpose of damages for injury or destruction of property by tortious conduct of another is to compensate the injured owner for the actual loss suffered" by making him whole. *Babich v. Pittsburgh & New England Trucking,* 386 Pa. Superior Ct. 482, 485, 563 A.2d 168, 170 (1989). Thus, the purpose is not to award a windfall. To the extent that a property owner is allowed to recover the cost of restoration that is greater than the diminution in market value, there is the possibility that the owner will receive a monetary windfall. By choosing to sell the property rather than to restore it, the owner will profit to the extent that the restoration costs recovered exceed the diminution in market value. The problem is exaggerated under *Lobozzo* where the restoration costs would be permitted to approach the value of the property.

■ In keeping with the purpose of compensatory damages and in prevention of windfall awards, we find it necessary to interpret "permanency" in terms of whether or not the cost of repair would be unfair or inappropriate under the circumstances. Where the cost of repair is shown to be reasonable, the injury to real property is not permanent and the cost of repair would be the appropriate measure of damages. However, where the cost of replacing the real property in its original condition disproportionately exceeds the diminution in the value of the property, the injury to real property is permanent and the cost of repair would not be fair or appropriate. Rather, the proper measure of damages for permanent injury would be the difference between the value of the property before and after the harm. Whether or not an injury to real property is "permanent" is an issue for the trier of fact.

■ In the present case, the trial court instructed the jury to award the cost of repair and precluded the Bakers from presenting any evidence regarding the diminution in market value. R. 604a–06a. As a result, the School District was awarded $1,224,925 to restore the hillside to its pre-landslide condition. R. 1470a, 1595a–96a. Accordingly, the trial court committed reversible error by excluding relevant evidence on the permanency of the injury and by improperly instructing the jury on the issue of damages.

## 9. ASSUMPTION OF RISK

Michael Baker contends that following the 1977 landslide, the School District understood the specific risk and voluntarily chose to accept the risk by proceeding with the construction of the embankment. As a result, Michael Baker contends the trial court erred in denying his requested charge on assumption of the risk. We disagree.

In *Howell v. Clyde,* 533 Pa. 151, 620 A.2d 1107 (1993), the Supreme Court abolished assumption of risk as an affirmative defense decided by the jury. The court concluded "to the extent that an assumption of risk analysis is appropriate in any given case, it shall be applied by the court as a part of the

duty analysis, and not as part of the case to be determined by the jury." *Id.* at 162, 620 A.2d at 1112–13. The court preserved the doctrine as an affirmative defense "in cases involving express assumption of risk, or cases brought pursuant to 402A (strict liability theory), or cases in which assumption of risk is specifically preserved by statute." *Id.* at 162 n. 10, 620 A.2d at 1113 n. 10.

■ An express assumption of the risk is where the plaintiff has given his express consent to relieve the defendant of an obligation to exercise care for the plaintiff's protection. *Rutter v. Northeastern Beaver County School District,* 496 Pa. 590, 437 A.2d 1198 (1981); *Hannon v. City of Philadelphia,* 120 Pa.Cmwlth. 383, 548 A.2d 693 (1988), *petition for allowance of appeal denied,* 522 Pa. 598, 562 A.2d 322 (1989). "Ordinarily such an agreement takes the form of a contract, which provides that the defendant is under no obligation to protect the plaintiff, and shall not be liable to him for the consequences of conduct which would otherwise be tortious." Restatement (Second) of Torts § 496B, Comment (a) (1965).

The present action does not involve a strict liability theory, nor does the it involve a statute which preserves assumption of risk as an affirmative defense. Therefore, in order for Michael Baker to prevail on this issue, he must show that there was an express assumption of the risk.

■ Michael Baker contends that the School District voluntarily assumed the risk of a landslide by proceeding with the construction of the embankment following the 1977 landslide. However, there is no evidence to establish an express or contractual assumption between the parties. So even if Michael Baker was able to establish that the School District voluntarily assumed the risk, without an express assumption, he is not entitled to affirmatively defend on assumption of the risk. Accordingly, the trial court did not err in denying the requested instruction and Michael Baker is not entitled to relief on this ground.

## 10. EVIDENTIARY & JUDICIAL ADMISSIONS

Carl Baker and Michael Baker both contend that the trial court committed reversible error in admitting excerpts from the deposition of Carl Baker regarding a joint venture as evidence and classifying the same as binding admissions against Carl Baker. We agree.

■ Preliminarily we note that there are two types of admissions: evidentiary and judicial. Leonard Packel and Anne Poulin, Pennsylvania Evidence, § 805.5 (1987). Evidentiary admissions generally refer to statements made by a party of "certain facts." *Sherman v. Franklin Regional Medical Center,* 443 Pa. Superior Ct. 112, 660 A.2d 1370 (1995), *petition for allowance of appeal denied,* 543 Pa. 695, 670 A.2d 142 (1995) (quoting *Durkin v. Equine Clinics, Inc.,* 376 Pa. Superior Ct. 557, 569, 546 A.2d 665, 670 (1988)). Judicial admissions are formal admissions which have the effect of withdrawing a fact from issue and dispensing it without the need for proof of the fact. *Durkin.* Judicial admissions are conclusive, whereas evidentiary admissions may always be contradicted or explained. *Lapayowker v. Lincoln College Preparatory School,* 386 Pa. 167, 125 A.2d 451 (1956), *overruled in part* by *Butler v. Butler,* 464 Pa. 522, 347 A.2d 477 (1975); *Durkin.*

■ Generally, statements made by a party in the pleadings, requests for admissions and stipulations of facts are treated as judicial admission. *Durkin.* The rationale is to expedite the trial by eliminating the need for proof of facts *which are not disputed.* Packel and Poulin, Pennsylvania Evidence at § 805.5. However, the same rationale does not apply to statements made by a party while testifying at trial or in a deposition. *Id.* Therefore, statements made by a party at trial or in deposition are not treated as judicial admissions. *Id.*

■ In the instant case, the trial court admitted excerpts of Carl Baker's deposition testimony which described the relationship between the Bakers as a "joint venture," over the objections of Carl Baker and Michael Baker. R. 1307a, 1337a. The trial

court treated Carl Baker's deposition statements as both evidentiary and judicial admission. R. 1329a. The trial court instructed the jury that the statements constituted evidence of a joint venture against both Carl Baker and Michael Baker. R. 1329a. The court further instructed the jury that the statements constituted a binding admission of a joint venture against Carl Baker, which he was not permitted to contradict. R. 1329a. The jury found that Michael Baker and Carl Baker were engaged in a joint venture. R. 347a–50a.

Under Pennsylvania law, a joint venture is an association of persons or corporations who by contract, express, or implied, agree to engage in a common enterprise for their mutual profit. *Richardson v. Walsh Construction Company*, 334 F.2d 334, 336 (3rd Cir.1964). "Joint venture" is a legal term of art with legal implications. Therefore, what constitutes a joint venture clearly involves a legal opinion or conclusion. *Keeler v. International Harvester Used Truck Center*, 317 Pa. Superior Ct. 244, 463 A.2d 1176 (1983).

Although Carl Baker referred to a joint venture in his deposition, his use of the term did not constitute an evidentiary or judicial admission of fact, but a legal conclusion which he was unqualified to make. No foundation was laid to show that Carl Baker was learned in the law. As a lay witness and without a proper foundation laid, Carl Baker could not be charged with understanding a legal term of art or its legal implications. Therefore, the trial court's admission of Carl Baker's deposition testimony with regard to the joint venture should not have been admitted into evidence. Moreover, since Carl Baker's statements were made during a deposition, the trial court erred by treating his statements as judicial admissions.

The combined effect of the improperly admitted deposition testimony and the repeated erroneous instructions classifying the statements as admissions were highly prejudicial to Carl Baker and Michael Baker. Accord-

ingly, the trial court committed reversible error by admitting the statements and instructing the jury that the statements constituted evidence of a joint venture against both Carl Baker and Michael Baker and as a binding admission against Carl Baker.

## 11. VICARIOUS ADMISSIONS

Carl Baker contends that the trial court erred in granting the motion in limine of the School District, excluding any testimony, reference or argument regarding the observations of William Trimble. Trimble was the School District's full-time project representative, who died prior to the trial. The proffered evidence was a memorandum written by an employee of Michael Baker purporting to record the observations of Trimble. R. 743a–72a. Carl Baker argues that Trimble's observations fall within the hearsay exception for representative or vicarious admissions. We disagree.

Pennsylvania has long adhered to a view of vicarious admission that is narrower than that under the Federal Rules of Evidence.[12] *Ligon v. Middletown Area School District*, 136 Pa.Cmwlth. 566, 584 A.2d 376 (1990); *Catagnus v. County of Montgomery*, 113 Pa.Cmwlth. 129, 536 A.2d 505 (1988). Under Pennsylvania law, "statements made by an agent, employee or other representative of a party to the litigation are admissible as evidence if the representative had express or implied authority to make them." *Northern Health Facilities v. Unemployment Compensation*, 663 A.2d 276, 279 (Pa.Cmwlth.1995), *petition for allowance of appeal denied*, 543 Pa. 698, 670 A.2d 145 (Pa.1995), (quoting *Brady v. Unemployment Compensation Board of Review*, 115 Pa. Cmwlth. 221, 539 A.2d 936, 939 (1988)). The amount of evidence needed to demonstrate the agent's specific authority to speak for the principal must be "formidable." *Durkin*, 376 Pa. Superior Ct. at 574, 546 A.2d at 673. Additionally, the offered statement must be against the interest of the party making the statement. *Id.*

---

**12.** Pennsylvania has not adopted the less restrictive Federal Rule of Evidence 801(d)(2)(D) which allows a vicarious admission if it is "a statement by the principal's agent or servant concerning a matter within the scope of his agency or employment made during the existence of the relationship." F.R.E. 801(d)(2)(D).

Here, the School District hired Trimble to be the full-time project representative. R. 1729a. Trimble was assigned the general responsibility to act as project representative on the construction of the school and was specifically required to conduct on-site observations and spot checks of the work in progress and report any defective work to the architects. R. 1730a. However, other than reporting defective work to the architects, Trimble was not authorized to make statements on behalf of the School District. In fact, the contract imposed limitations of authority which included that Trimble was not permitted to "advise on, or issue directions relative to, any aspect of construction means, methods, techniques...." R. 1733a.

Trimble's alleged statements were made after the 1977 landslide and related to the cause of the embankment failure. R. 1755a–56a. The statements were clearly outside of the authorization granted by the School District. Moreover, Trimble's statements were recorded by Michael Baker's employee, Donald Primosic, which raises an additional problem of hearsay within hearsay. Accordingly, the trial court did not err in excluding testimony, reference or argument as to the observations of William Trimble.

## V. CONCLUSION

For the reasons stated above, we conclude that the trial court abused its discretion and committed reversible error. Accordingly, the judgments entered by the prothonotary in favor of Duquesne Light and the School District on March 1, 1996 are vacated. These cases, arising from consolidated civil actions, are remanded for a new trial consistent with this opinion.

### ORDER

AND NOW, this 12th day of September, 1997:

1. The appeals from the orders of the Court of Common Pleas of Allegheny County, entered January 26, 1995, denying Michael Baker, Jr., Inc.'s motions for summary judgment at Nos. 778 and 785 C.D.1996, are quashed.

2. The appeals from the orders of the Court of Common Pleas of Allegheny County, entered March 14, 1996, denying Michael Baker, Jr., Inc. and Carl G. Baker's petitions to open judgment at Nos. 877, 878, 879 and 880 C.D.1996 are quashed. Coco Brothers Construction Company is dismissed as a party to this action.

3. The judgments entered on March 1, 1996 by the Prothonotary at Nos. GD 91–3455 and GD 91–18296, and challenged at the eight remaining docket numbers (776, 777, 779, 780, 781, 782, 783 and 784 C.D.1996) are vacated. These cases are remanded for a new trial consistent with this opinion.

Jurisdiction relinquished.

LEADBETTER, J., did not participate in the decision in this case.