# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Dauphin County Tax  : 
Sale of 2013  :  No. 2306 C.D. 2014
  : 
Appeal of:  Samuel M. Hester  :  Argued:  September 17, 2015


BEFORE:  HONORABLE DAN PELLEGRINI, President Judge[1]
                     HONORABLE RENÉE COHN JUBELIRER, Judge
                     HONORABLE P. KEVIN BROBSON, Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**                     **FILED:  January 8, 2016**


Samuel M. Hester (Objector), Administrator of the estates of Evelyn Anderson and Gail Anderson, appeals from a December 2, 2014 Order of the Court of Common Pleas of Dauphin County (trial court) denying Objector's Objections and Exceptions to the September 16, 2013 upset tax sale of 2401 Thornton Road, Harrisburg, Pennsylvania (Property).  On appeal, Objector argues that the trial court erred by not setting aside the upset tax sale because the Dauphin County Tax Claim Bureau (Bureau) did not sustain its burden to show that it strictly complied

---

[1] This case was assigned to the opinion writer before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

with multiple notice provisions of the Real Estate Tax Sale Law[2] (Law). Discerning no error, we affirm.

## I. Background

The following facts are not in dispute. The record owners of the Property are George and Evelyn Anderson, husband and wife. George Anderson died in 1988 and Evelyn Anderson died in 2005. Evelyn Anderson was survived by her daughter Gail, who was unmarried, had no issue, and suffered from disabilities. Upon Evelyn's death, Objector, Evelyn's first cousin, was named Administrator of her estate. (Letters of Administration for Evelyn Anderson, Objector's Hr'g Ex. 1, R.R. at 72a.) Gail Anderson died on January 2, 2010 and Objector was named Administrator of her estate on September 4, 2012. (Letters of Administration for Gail Anderson, Objector's Hr'g Ex. 3, R.R. at 76a.)

Property taxes on the Property for tax year 2011 remained unpaid and the Bureau sent a notice dated April 17, 2012 via certified mail to George and Evelyn Anderson at the Property notifying the couple of the delinquency and the claim against them. The notice was signed for by Objector on April 25, 2012. (Notice of Return and Claim (Claim Notice), Bureau's Hr'g Ex. 1, R.R. at 47a.) The Bureau then sent George and Evelyn Anderson a notice dated July 11, 2013 via certified mail, restricted delivery, return receipt requested, stating that "your property is about to be sold without your consent for delinquent taxes" and that the Bureau will expose properties to an upset tax sale on September 16, 2013. (Sale Notice, Bureau's Hr'g Ex. 2, R.R. at 48a-49a.) After multiple attempts to deliver notice to

---

[2] Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. §§ 5860.101-5860.803.

2

George and Evelyn Anderson, the notice was returned to the Bureau unclaimed. (Sale Notice, Bureau's Hr'g Ex. 2, R.R. at 50a.) The Bureau sent a second sale notice to George and Evelyn Anderson via first class mail on August 28, 2013. (Proof of Mailing, Bureau's Hr'g Ex. 8, R.R. at 63a, 66a.)

The Bureau proceeded to publish notice of the sale in the *Middletown Press and Journal*, *The Patriot News*, and *The Dauphin County Reporter*. (Bureau's Hr'g Exs. 3-5, R.R. at 52a-56a.) Further, the Bureau proffered a document, admitted into the record as a business record, over Objector's hearsay objection, which showed that Valerie McDowell of Palmetto Posting, the Bureau's posting agent, physically posted the Property on August 16, 2013 by placing a notice on the door.[3] (Field Report, Bureau's Hr'g Ex. 6, R.R. at 57a.)

The Property was sold as scheduled on September 16, 2013 to Statewide Enterprises, LLC and its principal, Philip J. Dobson (Purchaser). The Bureau then sent George and Evelyn Anderson notice, dated September 20, 2013, via certified mail that the Property was sold. (Notice of Property Sold, Bureau's Hr'g Ex. 9, R.R. at 68a.) The notice was signed for by Objector on September 27, 2013. (Notice of Property Sold, Bureau's Hr'g Ex. 9, R.R. at 67a.)

---

[3] Because the Bureau thought that George and Evelyn Anderson still lived at the Property, it undertook efforts to comply with the statutory notice requirements applicable to owner-occupied properties and attempted to personally serve notice upon the Andersons. Ms. McDowell served the dual role of posting the property and attempting personal service. Ms. McDowell attempted personal service three times: August 16, 2013 at 10:30 AM; August 17, 2013 at 12:12 PM; and August 19, 2013 at 5:48 PM. (Field Report, Bureau's Hr'g Ex. 6, R.R. at 58a.) Having failed to personally serve the Andersons with notice, the Bureau petitioned the trial court to waive personal service, which was granted on September 13, 2013. (Order, September 13, 2013, Bureau's Hr'g Ex. 7, R.R. at 60a.)

Objector timely filed Objections and Exceptions to the tax sale on November 1, 2013. (Objections and Exceptions, R.R. at 14a-16a.) Purchaser filed a Petition to Intervene with the trial court on February 11, 2014. (Petition of Philip J. Dobson and Statewide Enterprises, LLC to Intervene as Defendants/Respondents, C.R. at Item 17.) The trial court held a hearing on the matter on August 6, 2014. At the start of the hearing, the trial court granted Purchaser's Petition to Intervene. (Hr'g Tr. at 5, R.R. at 31a.) The trial court then heard testimony on the merits of the Objections and Exceptions.

The Bureau presented the testimony of Holly Martz, Deputy Director of the Bureau. Ms. Martz testified as follows.[4] Ms. Martz serves as the custodian of the Bureau's records and all exhibits entered into the record by the Bureau are regularly kept in the course of business. The Bureau thought George and Evelyn Anderson were still alive at the time it was providing notice of the pending upset tax sale. The Bureau took no action to inquire into Objector's identity after it received the return receipt from the April 17, 2012 Claim Notice signed by Objector. When the July 11, 2013 Sale Notice was returned unclaimed, the Bureau conducted a search for alternative addresses for George and Evelyn Anderson. Handwritten notations on the top right hand corner of the return receipt by Bureau staff reveal that, upon receiving the return receipt, Bureau staff searched its internal tax assessment software, Dove Net, to see if George and Evelyn moved or if the couple owned other property in Dauphin County. Bureau staff also went online and checked the White Pages to see if there was a change of address on

---

[4] Ms. Martz's testimony at the August 6, 2014 hearing is found at pages 31a-37a of the reproduced record.

record.  No alternative addresses were found.  At no point did the Bureau staff check the Register of Wills to ascertain whether George and Evelyn Anderson were deceased.

Objector testified as follows.[5]  Objector paid the property taxes for the Property between 2005 and 2010 out of an account owned by the estate of Evelyn Anderson.  At the time of the hearing, neither of the estates of Evelyn Anderson nor Gail Anderson had been fully administered.  Objector thought he could administer the estates himself, but it proved too difficult and he eventually hired an attorney.

Upon Evelyn Anderson's death, Objector took up residence at the Property to care for Gail Anderson.  Objector moved to his current residence in Steelton, Pennsylvania upon Gail's death in 2010, though he still maintained the Property, kept personal items at the Property, and received mail at both the Property and his Steelton residence.  Objector never informed the postal authorities that Evelyn Anderson's mail should be sent to Objector at his residence in Steelton, Pennsylvania and never formally alerted the Bureau that he was the Administrator of the estate of Evelyn Anderson, though he believes that he told a representative of a taxing authority that he was the Administrator when he was paying property taxes at some point prior to 2010.  The Property was vacant after Gail Anderson's death and Objector never saw notice of a pending upset tax sale posted on the Property.

---

[5] Objector's testimony at the August 6, 2014 hearing is found at pages 37a-43a of the reproduced record.

5

Objector never received the mailed notices that a sale of the Property was scheduled. He did receive certified mail for the Andersons at the post office, including the April 17, 2012 Claim Notice and the September 20, 2013 Notice of Property Sold, but the postal authorities would not always allow Objector to receive certified mail sent to Evelyn Anderson. Notwithstanding the lack of notice of the tax sale, Objector knew that taxes for tax year 2011 were delinquent and intended to pay the taxes out of the proceeds from the sale of his current home in Steelton, Pennsylvania.

The trial court issued an Order on December 2, 2014 dismissing the Objections and Exceptions and validating the sale. The trial court explained the basis of its Order in an Opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure on March 3, 2015. According to the trial court:

> First, the [Bureau] sent a notice of delinquent tax status by certified mail to the property in question, which was received and signed for by [Objector]. Next, the [Bureau] sent a notice of the tax sale on July 11, 2013, requiring a signature, which was returned by the post office. The [Bureau] followed up by sending another notice of the sale on August 28, 2013; this mailing was not returned by the post office. The [Bureau] took reasonable efforts to personally notify the landowner when the certified notice was not signed. [Ms.] Martz testified that in searching for the whereabouts of an addressee, the [Bureau] verifies ownership, checks prior records, and searches telephone books, and utilizes specialized software to aid in this effort. Pursuant to the [Law], the [Bureau] was issued a waiver of the requirement of personal notice. Additionally, on August 13, 2013, the [Bureau], through their posting company, posted the property in question . . . [and] published notice of the pending sale of the property in the *Dauphin County [Reporter]*, *The Middletown Press [and] Journal*, and *The Patriot News*. It is also significant that [Objector] received and signed for the September 27, 2013 notice that the sale of the property had occurred earlier that month, on September 1[6], 2013.

6

In light of the foregoing, the [Bureau] was not required to undertake additional notification efforts. . . . Based on this Court's credibility determinations, and drawing reasonable inferences from the testimony presented at the hearing, this Court finds that sufficient evidence was presented to support the conclusion that the applicable notice requirements were complied with in such a fashion to afford that [Objector] had actual knowledge and due process was served. The tax sale of the property in question should be upheld.

(Trial Ct. Op. at 5-6.) This appeal followed.[6] On appeal, Objector argues that the Bureau did not meet its burden to prove that all the notice requirements of the Law were satisfied and that he did not have actual notice of the tax sale.[7]

## II.     Compliance with the Notice Requirements of the Law

"[T]he forfeiture of a person's property rights for failure to pay taxes is a momentous event under the Pennsylvania and United States Constitutions." Stanford-Gale v. Tax Claim Bureau of Susquehanna County, 816 A.2d 1214, 1216 (Pa. Cmwlth. 2003). "Due process requires that the Bureau, before commencing

_____

[6] Our "review is limited to determining whether the trial court abused its discretion, clearly erred as a matter of law or rendered a decision with a lack of supporting evidence." Rice v. Compro Distributing, Inc., 901 A.2d 570, 574 (Pa. Cmwlth. 2006).

[7] Objector raises two additional arguments in order to preserve the issues for a possible appeal to the Supreme Court. These issues include: (1) that the Property sold for an inadequate price; and (2) that the trial court erred by allowing Purchaser to intervene in this matter. Objector acknowledges that this Court's precedent requires us to conclude that the inadequacy of the bid price is not a basis to set aside a tax sale and that the trial court has the discretion to allow successful bidders at a tax sale to intervene in defense of objections and exceptions to an upset tax sale. See In re 2005 Sale of Real Estate by Clinton County Tax Claim Bureau Delinquent Taxes, 915 A.2d 719, 723 (Pa. Cmwlth. 2007) (concluding that a successful bidder is a not a party, as a matter of course, to a proceeding on objections and exceptions, but that it is within the discretionary powers of a trial court to allow successful bidders to defend the validity of a tax sale); Povlow v. Brown, 315 A.2d 375, 377 (Pa. Cmwlth. 1974) (holding that it is not within a trial court's power to set aside an upset tax sale based "solely on the ground of the inadequacy of price"). Because Objector is correct that his arguments lack merit under our precedent, we shall not address these issues any further.

7

with a tax sale, 'provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the act and afford them an opportunity to present their objections.'" Rice v. Compro Distributing, Inc., 901 A.2d 570, 574 (Pa. Cmwlth. 2006) (quoting Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 314 (1950)). Accordingly, the General Assembly established specific requirements in the Law to "guard against deprivation of property without due process." Donofrio v. Northampton County Tax Claim Bureau, 811 A.2d 1120, 1122 (Pa. Cmwlth. 2002).

Relevant to this appeal, Section 602 of the Law requires three types of notice – publication, posting, and sale – and provides in relevant part:

> (a) At least thirty (30) days prior to any scheduled sale the bureau shall give notice thereof, not less than once in two (2) newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notice shall set forth (1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, (5) the descriptions of the properties to be sold as stated in the claims entered and the name of the owner.

> . . .

> (e) In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:

>> (1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this act.

>> (2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by

United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.

(3) Each property scheduled for sale shall be posted at least ten (10) days prior to the sale.

72 P.S. § 5860.602(a), (e).  In all tax sale cases, the tax claim bureau "has the burden of proving compliance with the statutory notice provisions."  Krawec v. Carbon County Tax Claim Bureau, 842 A.2d 520, 523 (Pa. Cmwlth. 2004).  "If any of the three types of notice is defective, the tax sale is void."  Gladstone v. Federal National Mortgage Association, 819 A.2d 171, 173 (Pa. Cmwlth. 2003).

**A. Evidence of Posting**

Objector first argues that the Bureau did not meet its burden of proving compliance with the posting requirement of Section 602(e)(3) of the Law.  72 P.S. § 5860.602(e)(3).  Objector contends that because Ms. McDowell, the Bureau's agent who actually posted notice on the Property, did not testify at the hearing, Ms. McDowell's Field Report proving posting is inadmissible hearsay.  Objector argues that because the Bureau did not proffer any admissible evidence proving that the Property was posted pursuant to Section 602(e)(3) of the Law, the tax sale should be set aside.

Purchaser argues in response that the trial court was correct when it ruled that the "Field Report" created by Ms. McDowell fits within the business record

exception to the hearsay rule. Further, Purchaser contends that the Bureau is entitled to the presumption that it conducts its business in conformance with the law.

The Field Report at issue is actually two reports detailing the location of the Property, the dates and times Ms. McDowell visited the Property to serve personal notice, the time and date notice was posted on the Property, and two photographs of the front door of the Property. (Field Report, Bureau's Hr'g Ex. 6, R.R. at 57a.) The first photograph, dated August 16, 2013, shows a notice attached to the front door. The second photograph, dated August 19, 2013, shows the front door of the Property with no notice attached.

The Pennsylvania Rules of Evidence define hearsay as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Pa. R.E. 801(c). Hearsay is not admissible unless one of the exceptions in Rule 803 of the Pennsylvania Rules of Evidence applies or if admissibility is alternatively granted by statute. Pa. R.E. 803. Rule 803(6), the so-called business-record exception, provides:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> . . .
>
> **(6) Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if,
>
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

10

(B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Pa. R.E. 803(6).  This standard is also reflected in the Uniform Business Records as Evidence Act, which provides:

(b) General rule.--A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

42 Pa. C.S. § 6108(b).

Upon review, we conclude that the trial court did not err in admitting the Field Report produced by Ms. McDowell into evidence as a business record.[8]  Ms. Martz testified at the hearing that she was the custodian of the Bureau's records, that the document was developed by the Bureau's agent, that such documents are

_____

[8] Our review of a decision to admit evidence under the business record exception is limited to determining whether the trial court acted within its discretionary power and that such discretion was exercised within the bounds of the Uniform Business Record as Evidence Act. Duquesne Light Company v. Woodland Hills School District, 700 A.2d 1038, 1049 (Pa. Cmwlth. 1997).  "A trial court's evidentiary rulings may be reversed on appeal upon a showing of an error of law or clear abuse of discretion." Id.

normally kept by the Bureau, that those files are kept in her office, and that the documents are signed by the posting agent and notarized. (Hr'g Tr. at 9-10, R.R. at 32a.) Ms. Martz testified that the Bureau's posting agent posts the properties subject to the tax sale and then provides the Bureau with files on a disc containing the pictures and other information. (Hr'g Tr. at 10, R.R. at 32a.) Although the Field Report itself is not dated, the activities listed in the report occurred between August 16, 2013 and August 19, 2013. As such, it is clear that the Field Report was developed at some point after August 19, 2013 and prior to the tax sale on September 16, 2013. Thus, we conclude that the testimony and the Field Report, itself, contain sufficient indication of reliability to warrant its admission and we cannot say that the trial court abused its discretion. See In re Indyk's Estate, 413 A.2d 371, 373 n.2 (Pa. 1979) (stating that "[a] determination as to whether the event is sufficiently contemporaneous with the event is left to the broad discretion of the trial court").

Objector argues in the alternative that, even if the Field Report is a business record subject to Rule 803(6), the information contained therein is double hearsay and must be excluded. Objector contends that Ms. McDowell's statements that she posted the notice and the photographs are double hearsay and inadmissible.

Double hearsay is "[a]n out-of-court declaration [that] contain[s] another out-of-court declaration." Commonwealth v. Laich, 777 A.2d 1057, 1060 (Pa. 2001). Double hearsay is admissible when each statement within an out-of-court declaration falls under an exception to the hearsay rule. Id. "When dissecting a double hearsay statement, the reliability and trustworthiness of each declarant must

12

be independently established." Commonwealth v. Scott, 470 A.2d 91, 94 (Pa. 1983). The Field Report does not appear to contain double hearsay. All of the statements contained in the Field Report are statements by a single declarant, Ms. McDowell, detailing her activities with regard to the Property. Objector has provided no support for his contention that each entry in a report created by a single declarant detailing activities must be independently analyzed. Accordingly, we view the Field Report as a single out-of-court declaration that falls under the business record exception and conclude that the trial court did not abuse its discretion or make an error of law in admitting the Field Report into evidence.

## B. Mailed Notice

Objector next argues the Bureau did not prove strict compliance with the notice provisions of the Law because notice was not mailed to the heirs of Gail Anderson. Objector argues further that the evidence does not support a conclusion that, upon learning that the July 11, 2013 certified mail notifying George and Evelyn Anderson of the tax sale was unclaimed and receiving the certified mail receipt of the April 17, 2012 Claim Notice signed by Objector, the Bureau complied with the requirements of the Law and due process to undertake reasonable efforts to discover the whereabouts of and provide notice to the owner(s) of the Property.

Pursuant to Section 602(e) of the Law, 72 P.S. § 5860.602(e), the Bureau must send notice to the "owner" of the property scheduled to be exposed to a tax sale. An "Owner" is defined by Section 102 of the Law as:

13

the person in whose name the property is last registered, if registered according to law, or, if not registered according to law, the person whose name last appears as an owner of record on any deed or instrument of conveyance recorded in the county office designated for recording and in all other cases means any person in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, or the reputed owner or owners thereof, in the neighborhood of such property; as to property having been turned over to the bureau under Article VII by any county, "owner" shall mean the county.

72 P.S. § 5860.102. We have summarized this definition "as the person in whose name the property is last registered, or the person whose name last appeared as owner of record on any deed." Stanford-Gale, 816 A.2d at 1217. There is no dispute that the last record owners of the Property are George and Evelyn Anderson. (Deed, Objector's Hr'g Ex. 2, R.R. at 73a.)

Although it is clear that the Bureau satisfied Section 602(e) of the Law by mailing notice to the last record owners of the Property, George and Evelyn Anderson, the Andersons were deceased at the time and no notice was directly sent to living persons with interest in the Property. The General Assembly added Section 607.1 of the Law[9] in 1986, requiring tax claim bureaus to go beyond simply sending notice to the address listed on the property records when any doubt is raised concerning receipt of the mailed notice. Farro v. Tax Claim Bureau of Monroe County, 704 A.2d 1137, 1143 (Pa. Cmwlth. 1997). Section 607.1 states:

(a) When any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner, mortgagee, lienholder or other person or entity whose property interests are likely to be significantly affected by such tax sale, and such mailed notification is either returned without the required receipted personal

---

[9] Added by Section 30 of the Act of July 3, 1986, P.L. 351, 72 P.S. § 5860.607a.

14

signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee or is not returned or acknowledged at all, then, before the tax sale can be conducted or confirmed, **the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him**. The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

(b) The notification efforts required by subsection (a) shall be in addition to any other notice requirements imposed by this act.

72 P.S. § 5860.607a (emphasis added).

By enacting Section 607.1, the General Assembly required tax claim bureaus to conduct reasonable efforts to discover the whereabouts of, and provide notice to, persons to which notice is required by other provisions of the Law. Neither Section 607.1 of the Law nor due process "require[s] the taxing bureau to perform the equivalent of a title search or to make decisions to quiet title." In re Tax Sale of Real Property Situated in Jefferson Township, 828 A.2d 475, 479 (Pa. Cmwlth. 2003); see also Stanford-Gale, 816 A.2d at 1217 (holding that reasonably calculated notice does not require tax claim bureaus to conduct extraordinary efforts to provide notice). Further, Section 607.1(a) of the Law does not require the Bureau "to surf the web for an owner's alternative address or phone number,

particularly where the Bureau is satisfied through other efforts that it has the owner's correct address on file." Jefferson Township, 828 A.2d at 480. We have summarized the efforts required as "determining the owners of record and then to use ordinary common sense business practices to ascertain proper addresses where notice of the tax sale may be given." Id. at 479.

Objector, relying on our decision in Krawec, contends that the Bureau should have searched the Register of Wills to determine whether George and Evelyn were alive prior to conducting the upset tax sale. In Krawec, we addressed an upset tax sale of property owned by a taxpayer who died after receiving the notice of a claim from the tax claim bureau. Krawec, 842 A.2d at 522. A second claim notice sent by the bureau to taxpayer was returned to the bureau marked "Deceased." Id. The bureau then sent a notice of sale to the deceased property owner, which was returned "attempted not known." Id. The bureau then attempted to discover a new address for taxpayer by checking its files, the telephone directory, and the records of the tax assessment bureau, tax collector and recorder of deeds. Id. The bureau did not check the register of wills to see if a will had been probated or to ascertain the address of taxpayer's estate. Id. at 525. Upon review we held that, under those circumstances, "'ordinary common sense business practices' would dictate that the Bureau should inquire of the Register of Wills whether a will had been probated for [the t]axpayer" and voided the sale. Id.

However, the bureau in Krawec had received a returned notice from the postal authorities marked "Deceased," while the Bureau here had no notice that George and Evelyn Anderson are deceased. Upon receiving the tax sale notice

16

returned unclaimed, Bureau staff searched the Bureau's internal tax assessment software called "Dove Net" and the White Pages to see whether George and Evelyn Anderson were listed under a different address. (Hr'g Tr. at 24, R.R. at 36a.) Without having any knowledge that the record owners are deceased, the Bureau was under no obligation to search the Register of Wills to ascertain whether notice should be sent to an estate administrator. If Objector had notified the post office that George and Evelyn Anderson are deceased or administered the estates in a timely manner, the Bureau would have received notice that the Andersons are deceased and would have been required, like the tax claim bureau in Krawec, to search the Register of Wills for an alternative address of the estate. The fact that the Bureau did not have such information was due to Objector's own doing and did not impose additional obligations on the Bureau.

Relatedly, Objector argues that the tax sale should be set aside because the Bureau failed to put an adequate notation in the record describing the efforts it undertook to locate the owners of the Property and the results thereof.

Section 607.1(a) of the Law provides that after exercising a reasonable search to discover the whereabouts of the property owner, "regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof." 72 P.S. § 5860.607a(a).

Here, the notation at issue are markings stating "DN" and "WP" written on the top of the return receipt to the July 11, 2013 Sale Notice. (Sale Notice,

17

Bureau's Hr'g Ex. 2, R.R. at 48a.) Ms. Martz testified that these markings were placed on the Sale Notice by one of three women that work in her office and signify that Bureau staff searched their Dove Net system and the White Pages. (Hr'g Tr. at 25-26, R.R. at 36a.) Ms. Martz testified that placing such handwritten notations is the normal way that the Bureau notes searches for alternative addresses. (Hr'g Tr. at 25-26, R.R. at 36a.) Although Section 607.1 does not provide detailed requirements for the notation, the notations in the file, combined with the credible testimony of Ms. Martz, are sufficient to show that reasonable efforts were taken. As such, we do not find Objector's argument persuasive that the tax sale should be set aside because the Bureau failed to put an adequate notation in the record.

Objector also argues that there is no proof that the August 28, 2013 sale notice sent via first class mail was received by Objector. Objector contends that the presumption that mail properly addressed and posted is received by the addressee is not applicable here because the mail was addressed to George and Evelyn Anderson, who are deceased.

It is well settled that, under the "mailbox rule," it is presumed that items properly mailed will be received by the person to whom the mail was addressed. C.E. v. Department of Public Welfare, 97 A.3d 828, 832 (Pa. Cmwlth. 2014). Even if Objector is correct that the legal presumption is inapplicable here, the Bureau is under no obligation to prove that the notice sent via first class mail was received. The Bureau's burden is only to show that the letters were sent to the record owners. See Matter of Tax Sales by Tax Claim Bureau of Dauphin County,

651 A.2d 1157, 1160 (Pa. Cmwlth. 1994) (stating that "[w]here the bureau has complied with notice requirements of the Law, the fact that notice was not actually received by the persons responsible for paying the delinquent taxes will not defeat the sale").

Accordingly, for the foregoing reasons, we conclude that the Bureau strictly complied with the notice requirements of the Law and the tax sale of the Property shall not be set aside.[10]  The December 2, 2014 Order of the trial court is affirmed.

_____
**RENÉE COHN JUBELIRER, Judge**

---

[10] Because we conclude that the Bureau strictly complied with the notice requirements of the Law, we need not address Objector's argument that he lacked actual notice that the Property was to be exposed to an upset tax sale on September 16, 2013.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Dauphin County Tax         :
Sale of 2013                          :    No. 2306 C.D. 2014
                                    :
Appeal of: Samuel M. Hester     :

## O R D E R

NOW, January 8, 2016, the December 2, 2014 Order of the Court of Common Pleas of Dauphin County, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: Dauphin County Tax | : | |
| Sale of 2013 | : | No. 2306 C.D. 2014 |
| | : | |
| Appeal of: Samuel M. Hester | : | Argued: September 17, 2015 |

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
                  HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE P. KEVIN BROBSON, Judge

**DISSENTING OPINION**
**BY JUDGE BROBSON**                                   **FILED:  January 8, 2016**

I dissent from Part II.A of the majority opinion.  There, the majority examines Samuel M. Hester's (Objector) claim that the Dauphin County Tax Claim Bureau (Bureau) did not meet its burden to prove that it strictly complied with the posting requirement of Section 602(e)(3) of the Real Estate Tax Sale Law (Law).[1]  Objector contends that a field report created by a third-party posting company, Palmetto Posting, constituted inadmissible hearsay.  The majority concluded that the field report, which provided photographs of 2401 Thornton Road, Harrisburg, Pennsylvania (Property), and the dates and times at which the Property was posted, was admissible under Rule 803(6) of the Pennsylvania Rules of Evidence, which is often referred to as the "business records exception" to hearsay.  I respectfully disagree.

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. § 5860.602(e)(3).

During the hearing before the Court of Common Pleas of Dauphin County (trial court), the Bureau offered the field report as evidence that the Property was posted pursuant to the requirements of Section 602(e)(3) of the Law. The Bureau's witness, Holly Martz, testified as follows regarding the Bureau's procedures concerning posted notice:

> [The field report] is a copy of the sale posting which is completed for the sale of the property as required by . . . [the L]aw. The . . . Bureau hires a posting company which we have used now for probably four years.
>
> They post the properties that are going to tax sale and then they provide us a file on disc which I keep in the office and I can also print out actual pictures of the postings that they did that day. It is also notarized and signed by the person that posts them.

(Reproduced Record (R.R.) at 32a.) Ms. Martz further explained that the field report was kept in the Bureau's office in the normal course of business for tax sales. (*Id.*) Objector objected to the admission of the field report. The trial court overruled the objection and admitted the field report pursuant to the business records exception to hearsay set forth in Pa. R.E. 803(6).

Pa. R.E. 803 sets forth exceptions to the rule against hearsay, including an exception for records of a regularly conducted activity. Pa. R.E. 803(6) defines the phrase "records of a regularly conducted activity" as:

> A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if,
>
> > (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> >
> > (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association,

profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor other circumstances indicate a lack of trustworthiness.

A qualified witness need not be the preparer of the record, nor does the qualified witness need to have personal knowledge of the information contained in the record. *R.A. Freudig Assocs. v. Ins. Dep't*, 532 A.2d 509, 512 (Pa. Cmwlth. 1987). "As long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness for the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence." *In re Indyk's Estate*, 413 A.2d 371, 373 (Pa. 1979). Specifically, "[a]n individual may be a qualifying witness and his testimony may lay a proper foundation for the admission of a report if his responsibilities include the review of the report in question and he testifies that the report was prepared by a subordinate of his and maintained for him by a member of his staff." *First Ward Republican Club of Phila. v. Pa. Liquor Control Bd.*, 11 A.3d 38, 46 (Pa. Cmwlth. 2010), *appeal denied*, 24 A.3d 864 (Pa. 2011).

Here, Ms. Martz's testimony was insufficient to overcome the hearsay objection. The field report was not generated by the Bureau in the course of a regularly conducted activity of its business. Rather, the field report was created in the course of a regularly conducted activity of a third party—namely, Palmetto

Posting, over which Ms. Martz had no supervisory relationship. In fact, Ms. Martz possessed very little, if any, specialized knowledge or training with respect to the regularly conducted activities of Palmetto Posting. Ms. Martz was, therefore, unqualified to testify as to the activities of Palmetto Posting's employees. Thus, in order to overcome the hearsay objection, it was necessary for an employee of Palmetto Posting to lay a foundation for the admissibility of the field report by testifying to the manner in which the report was prepared and maintained. *But see, e.g.*, *Zion Bullitt Ave. Ltd. P'ship v. Westmoreland Cnty. Tax Claim Bureau*, (Pa. Cmwlth., No. 1396 C.D. 2014, filed June 4, 2015), slip op. at 7-8 (concluding that representative trained and certified by USPS in tracking items had sufficient training and specialized knowledge so as to testify competently to USPS delivery record).[2] Further, there is no indication that the record was created at or near the time of posting. Although the majority explains that "it is clear that the Field Report was developed at some point after August 19, 2013 and prior to the tax sale on September 16, 2013," (Maj. Op. at 12), the field report is not dated. Without the testimony of an employee of Palmetto Posting, there is no way to discern when the field report was created so as to evaluate whether the record was made at or near the time of posting.

Based on the circumstances described above, I would conclude that Ms. Martz's testimony was insufficient to overcome the hearsay objection to the field report, and, therefore, the field report constituted inadmissible hearsay. The Bureau should have presented the testimony of an employee of Palmetto Posting so

---

[2] This decision is cited for its persuasive value, but not as binding precedent, pursuant to Section 414 of the Commonwealth Court's Internal Operating Procedures.

PKB-4

as to establish the trustworthiness of the document. Absent the information contained in the field report, there is no evidence to establish that the Bureau strictly complied with the posting requirement of Section 602(e)(3) of the Law. I would, therefore, reverse the trial court's order.

_____
P. KEVIN BROBSON, Judge