J-A03019-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JEAN NAGY AND CHRISTOPHER NAGY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| AVANT GARDENING, INC. | : | |
| Appellant | : | No. 852 WDA 2018 |

Appeal from the Judgment Entered June 8, 2018
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-16-000336

BEFORE:   BOWES, J., SHOGAN, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 1, 2019**

Appellant, Avant Gardening, Inc., appeals from the June 8, 2018 judgment entered on a verdict in favor of Appellees, Jean and Christopher Nagy, in the amount of $47,840.00.  After review, we affirm.

The record reveals that in 2004, Appellees entered into an oral contract with Appellant for the construction of retaining walls.  N.T., 5/4/18, at 29.  Appellant agreed to construct the walls using VERSA-LOK bricks and VERSA-GRID geotextile reinforcing material.  *Id.* at 32.  Appellees paid Appellant $45,935.06 for the walls.  *Id.* at 53.  Appellant completed the walls in two phases between 2004 and 2007.  *Id.* at 46.  After Appellant completed the construction, Appellees observed defects in the walls including splitting, leaning, tilting, and sinking of the bricks.  *Id.* at 48.  Appellees contacted Appellant, and Appellant returned and attempted to repair the walls over the

_____
*   Retired Senior Judge assigned to the Superior Court.

next seven years. *Id.* at 46-62. In 2016, despite numerous repairs, Appellees had the retaining walls demolished and rebuilt by a separate contractor at a cost of $52,690.00. N.T., 5/7/18, at 5.

On January 8, 2016, Appellees filed a *praecipe* for a writ of summons. On May 19, 2016, Appellees filed a complaint against Appellant, and on August 8, 2016, Appellees filed an amended complaint. In the amended complaint, Appellees asserted claims of negligence in the construction of the walls, breach of contract, and unjust enrichment. Following a nonjury trial, the trial court found in favor of Appellees and awarded damages in the amount of $47,840.00.

Appellant filed timely post-trial motions that were denied on May 29, 2018. Appellant filed a *praecipe* for the entry of judgment on the verdict, and judgment was entered on June 8, 2018. This timely appeal followed. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues for this Court's consideration:

> 1. Did the Trial Court err as a matter of law by not finding that Appellees' claims were time-barred by the Statute of Limitations?;
>
> 2. Did the Trial Court err as a matter of law and/or abuse its discretion by not finding that Appellees had committed spoliation of evidence?;
>
> 3. Did the Trial Court err as a matter of law and/or abuse its discretion by permitting the use or admission of unauthenticated evidence which informed an expert's testimony?;

4. Did the Trial Court err as a matter of law and/or abuse its discretion by permitting the improper use of a PowerPoint presentation not included in the pre-trial statement and not disclosed to Appellant prior to trial?;

5. Did the Trial Court err as a matter of law and/or abuse it discretion by allowing expert testimony beyond the fair scope of that expert's report?; and

6. Did the Trial Court err as a matter of law and/or abuse its discretion by entering a verdict against the weight of evidence?

Appellant's Brief at 5.

We have reviewed the briefs of the parties, the relevant law, and the certified record before us, including the trial court's August 7, 2018 opinion. After review, it is our determination that the trial court's opinion thoroughly and correctly addressed Appellant's claims of trial court error. Accordingly, we affirm on the basis of the trial court's opinion and adopt its reasoning as our own. The parties are directed to attach a copy of that opinion in the event of further proceedings in this matter.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/1/2019

- 3 -

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION

JEAN NAGY and CHRISTOPHER NAGY,
wife and husband,

    Plaintiff-Appellees,

v.

AVANT GARDENING, INC.,

    Defendant-Appellant.

No:    GD 16-000336

Superior Court No.:   852 WDA 2018

**OPINION**

**BY:**

**Honorable Donald R. Walko, Jr.**
706 City-County Building
414 Grant Street
Pittsburgh, PA 15219

COPIES TO:

Counsel for Plaintiffs:
David M. Tkacik, Esquire
TKACIK LAW OFFICE
9500 Brooktree Rd., Ste. 205
Wexford, Pennsylvania 15090

Counsel for Defendant:
Dennis M. Blackwell, Esquire
THE BLACKWELL LAW FIRM
Benedum Trees Building
223 Fourth Avenue, 9th Floor
Pittsburgh, Pennsylvania 15222

Robert O Lampl, Esquire
James R. Cooney, Esquire
THE LAW OFFICE OF ROBERT O LAMPL
Benedum Trees Building
223 Fourth Avenue, 4th Floor
Pittsburgh, Pennsylvania 15222

FILED
2018 AUG -7 AM 10: 11
DEPT. OF COURT RECORDS
CIVIL/FAMILY DIVISION
ALLEGHENY COUNTY, PA

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| JEAN NAGY and CHRISTOPHER NAGY, wife and husband, | CIVIL DIVISION |
| Plaintiff-Appellees, | No.: GD 16-000336 |
| v. | Superior Court No.: 852 WDA 2018 |
| AVANT GARDENING, INC., | |
| Defendant-Appellant. | |

## OPINION

WALKO, J.                                                    August 6, 2018

This appeal concerns the May 11, 2018, Non-Jury Verdict entered by the Court in favor of the Plaintiffs, Jean Nagy and Christopher Nagy ("Plaintiffs"), regarding claims for defective retaining walls constructed by Defendant, Avant Gardening, Inc. ("Defendant"). The Court awarded damages to Plaintiffs in the amount of forty-seven thousand, eight-hundred and forty dollars ($47,840.00). Defendant appeals. For the reasons set forth in this Opinion, the Order should be affirmed.

## I. PROCEDURAL HISTORY

On January 8, 2016, Plaintiffs filed a Praecipe for Writ of Summons upon Defendant. Plaintiffs filed a three (3) count Amended Complaint against Defendant on August 8, 2016 for negligence, breach of contract, and unjust enrichment. *See* Plaintiff's Amended Complaint, dated August 8, 2016. Plaintiffs alleged that Defendant negligently constructed a number of retaining walls ("the Walls") on Plaintiffs' property at 3300 Old Oakdale Road, South Fayette Township, Pennsylvania, 15057. *Id.* Plaintiffs further alleged that the construction project required expertise and skills that Defendant did not possess. *Id.*

2

Construction allegedly began in October of 2004 and ended in December of 2007. *Id.* Shortly thereafter, Plaintiffs informed Defendant of the Walls "buckling," and Defendant insisted it could repair the Walls. *Id.* Repair efforts began in the summer of 2008 and continued until October of 2015 when Plaintiffs requested that Defendant cease work. *Id.* Plaintiffs asserted that "upon consultation with engineering and landscaping professionals," the Walls were determined to have been constructed incorrectly by Defendant. *Id.* Plaintiffs further asserted that the Walls required demolition and replacement. *Id.*

A three-day non-jury trial was held on May 4, 7, and 8, 2018.[1] Plaintiffs appeared with their counsel of record, Attorney David M. Tkacik. Defendant appeared with its counsels of record, Attorneys Dennis M. Blackwell and James R. Cooney.

Defendant presented a Motion *In Limine* to Limit Claims on May 4, 2018. Defendant requested that Plaintiffs' claim for negligence be limited to acts that have occurred within the two (2) years prior to the issuance of the Writ of Summons. Defendant further requested that Plaintiffs' claims for breach of contract and unjust enrichment be limited to acts and payments within four (4) years prior to the issuance of the Writ of Summons. The Court denied the motion after determining that the Repair Doctrine applied and prevented the statutes of limitations from being tolled. *See* Order of Court denying Motion *In Limine* to Limit Claims dated May 4, 2018.

Defendant presented a Motion *In Limine* to Exclude Evidence Based on Spoliation on May 4, 2018. Defendant asserted that Plaintiffs spoliated evidence to the prejudice of Defendant when they demolished and replaced the Walls. Defendant, therefore, requested that Plaintiffs "be precluded from offering any evidence that Avant Gardening, Inc. failed to properly construct the retaining walls." *See* Order of Court denying Motion *In Limine* to Exclude Evidence Based on

---

[1] References to the hearing transcripts for May 4, 7, and 8, 2018 will be cited to as "H.T. Day 1," "H.T. Day 2," and "H.T. Day 3" respectively.

Spoliation dated May 4, 2018. Plaintiff's counsel, Attorney Tkacik, responded:

> I, as counsel, informed [Defendant] via letter, certified mail on April 5, 2016, that they must -- if they wanted the opportunity to inspect, document, photograph the retaining walls for purposes of litigation or trial, they must contact me in writing to arrange a time to do so. And my letter stated that the work would start in approximately three weeks.
>
> At that point, we did have a docket number on April 5, 2016. I subsequently arranged for a time to meet at the property with counsel for [Defendant], Dennis Blackwell, and we did meet there with the defendant's engineer present. Defendant's expert was present at that time and studied the walls, took measurements.
>
> Subsequent to that, on July 13, 2016, I sent a letter to Mr. Blackwell indicating that he had not notified me that he wished to be present during the demolition of the walls. And that was something in my initial letter that I notified him that if he wanted to be present during the demolition of the walls, that he had to let me know. He never let me know. And, subsequently, the walls were demolished.

*See* H.T. Day 1, at 4, 5. Defendant's counsel did not deny this averment, but insisted that their expert's inspection did not negate the prejudice of the spoliation. *Id.* at 6. The Court denied the Motion *In Limine* after determining that Defendant suffered no prejudice since Plaintiffs gave Defendant more than two (2) months' time to inspect the Walls. *Id.*

After the trial, the Court found in favor of Plaintiffs, and awarded damages in the amount of forty-seven thousand, eight-hundred and forty dollars ($47,840.00). *See* Non-Jury Verdict, dated May 11, 2018.

On May 17, 2018, Defendant filed a Motion for Post-Trial Relief. Defendant averred the following:

4

4. This Honorable Court's rulings were erroneous regarding the following matters:

   a. The Court failed to find that the Plaintiffs claims were time-barred by the Statute of Limitations, which issue was raised by Defendant's Motion for Summary Judgment and by Defendant's Motion in Limine to Limit Claims;

   b. The Court failed to find that Plaintiffs had spoliated evidence by demolishing the walls constructed by Defendant, which issue was raised by Defendant's Motion in Limine to Exclude Evidence Based on Spoliation;

   c. The Court erroneously permitted expert testimony beyond the fair scope of the expert report, which was raised by objections at trial; and

   d. The Court erroneously permitted the admission or reference to inadmissible evidence, including:

      (1) The Plaintiffs' expert, Robert J. Capo's report, which error was raised by Defendant's Motion in Limine to Exclude Certain Reports and Exhibits and by objections at trial;

      (2) A Power Point presentation prepared by Plaintiffs' expert, Robert J. Capo, which error was raised by objections at trial;

      (3) Drawings and reports produced by Gateway Engineering, which error was raised by Defendant's Motion in Limine to Exclude Certain Reports and Exhibits; and

      (4) Reports produced by ECS Mid-Atlantic, which error was raised by Defendant's Motion in Limine to Exclude Certain Reports and Exhibits.

....

*See* Defendant's Motion for Post-Trial Relief, dated May 17, 2018.

Defendant requested that the Court grant a new trial or enter a judgment notwithstanding the verdict in favor of Defendant. After hearing oral arguments, the Court denied Defendant's Motion for Post-Trial Relief. *See* Order of Court, dated May 29, 2018.

Defendant raises the following matters complained of on appeal:

   a. This Honorable Court erred as a matter of law and/or abused its discretion by not finding that Plaintiffs' claims were time-barred by the Statute of

5

Limitations;

b. This Honorable Court erred as a matter of law and/or abused its discretion by not finding that Plaintiffs had committed spoliation of evidence;

c. This Honorable Court erred as a matter of law and/or abused its discretion by permitting the admission of evidence which was improperly authenticated, namely:

   i. Drawings and reports produced by Gateway Engineering, and

   ii. Reports produced by ECS Mid-Atlantic;

d. This Honorable Court erred as a matter of law and/or abused its discretion by permitting the admission of hearsay evidence, namely:

   i. The expert report of Robert J. Capo,

   ii. Drawings and reports produced by Gateway Engineering, and

   iii. Reports produced by ECS Mid-Atlantic;

e. This Honorable Court erred as a matter of law and/or abused its discretion by permitting the entry of a report, the Powerpoint presentation, prepared by Plaintiffs' expert which had not previously been listed on the pretrial statement and which had not previously been provided to Defendant;

f. This Honorable Court erred as a matter of law and/or abused its discretion by permitting expert testimony beyond the fair scope of the expert report; and

g. This Honorable Court erred as a matter of law and/or abused its discretion by entering a verdict against the weight of evidence, insofar as the Court failed to take into account that not all walls were constructed negligently or were in breach of contract; and insofar as the Court failed to take into account the age of the walls and depreciation.

*See* Defendant's Concise Statement of Matters Complained of on Appeal Pursuant to Pa.R.C.P. 1925(b), dated July 3, 2018.

\* \* \*

## II. FACTS

1. Testimony of the Parties.

6

a. **Plaintiffs, Jean and Christopher Nagy.**

Jean Nagy testified that in 2004 Plaintiffs entered into an oral contract with Defendant's managing supervisor, Roland Gaglia, for the construction of five (5) retaining walls in their backyard with "VERSA-LOK" stone and "VERSA-grid geo textile reinforcing material." *See*, H.T. Day 1, at 29, 132, 135; H.T. Day 2, at 5; Plaintiff's Exhibit 3. Ms. Nagy testified that Plaintiffs believed that Mr. Gaglia was capable of properly constructing the Walls since he agreed to do the project. *See*, H.T. Day 1, at 135, 136; Plaintiff's Exhibit 3. Ms. Nagy further testified that Plaintiffs believed that Mr. Gaglia understood how to use VERSA-LOK and VERSA-grid geo materials because Defendant's proposal and acceptance read: "All work to be completed in a workman-like manner according to standard practices." *See*, H.T. Day 2, at 35; Plaintiff's Exhibit 3.

Construction was planned in two (2) phases and lasted from 2004 until "November or December" of 2007. *Id.* at 45, 47. Ms. Nagy testified that when she asked Mr. Gaglia if a building permit would be necessary for any of the construction, he told her it would not because none of the walls would be above four (4) feet tall. *See* H.T. Day 1, at 41, 42. Ms. Nagy testified that Mr. Gaglia built the Walls first and "then backfilled [them] with stone." *Id.* at 108.

Ms. Nagy testified that after completion of the construction of the Walls that at "various points throughout the whole wall system...[Plaintiffs] were seeing splitting, leaning, tilting[,] sinking[,] and spacing" of the brickwork. *Id.* at 48, 60. Ms. Nagy further testified that she feared for her children's safety since bricks from the Walls were "fall[ing] down by themselves[.]" *Id.* at 71, 142. Ms. Nagy presented photographs of the Walls taken during the periods of 2004 to December 2016. She testified that the photographs depicted the deterioration of the Walls during that time. *Id.* at 44, 104; Plaintiff's Exhibits 1a, 1b, 16a, 16b.

Ms. Nagy testified that Plaintiffs paid Defendant forty-five thousand, nine-hundred and

7

thirty-five dollars, and six cents ($45,935.06) to construct the Walls. *Id.* at 49, 53; Plaintiff's Exhibits 2-4. She also testified that by October 2015 the Walls needed to be demolished and replaced due to safety concerns. *Id.* at 71, 72. Ms. Nagy testified that Plaintiffs then hired C&R Landscaping to reconstruct the Walls using the existing bricks. *Id.* at 73, and that Plaintiffs paid C&R Landscaping fifty-two thousand, six-hundred and ninety dollars ($52,690.00) for the reconstruction. *Id.* at 102; Plaintiff's Exhibit 10.

b. Roland Gaglia, Managing Supervisor for Avant Gardening, Inc.

Mr. Gaglia is the managing supervisor of Avant Gardening, Inc., and is married to its "sole owner." *See,* H.T. Day 2, at 147. Mr. Gaglia testified that he had built "similar walls" in the past, but none "that big." *Id.* at 149. At the beginning of the project, Mr. Gaglia testified that he believed that an engineer was not necessary and he did not investigate local building ordinances. *Id.* at 151, 152. During contract negotiations Mr. Gaglia failed to inform Plaintiffs that "the scope of [the] project was beyond anything [he] had done before" since he started in business in 1986. *Id.* at 147, 159.

Mr. Gaglia testified that he had attended "some training classes" regarding VERSA-LOK, "[b]ut nothing that was real, quote, formal." *Id.* at 174. Mr. Gaglia further testified that at the time of the construction contract, he had never "done a retaining wall where [he] worked with an engineer[.]" *Id.* at 184.

2. Gary Hartz, Building Code Official.

Gary Hartz, the building code official for South Fayette Township, testified that the Walls as depicted in a 2007 photograph would have required a building permit and an engineer's "drawing" with a seal pursuant to Art. VI, Ord. No. 230A, §§ 163-1 *et seq.* of the Township of South Fayette's municipal code. *Id.* at 80, 82; Plaintiff's Exhibits 1b, 10.

8

Mr. Hartz stated that "you would need a permit because anything over four feet in height I think would have a bigger chance of failing and needs to be engineered to look at the loads imposed on them." *See*, H.T. Day 1, at 80. Mr. Hartz further explained that if any portion of the Walls were taller than four (4) feet in height the entire project would require a building permit. He added that portion(s) over four (4) feet would require an engineer. *Id.* at 80-82.

### 3. Expert Witness Testimony.

#### a. Plaintiffs' Expert, Robert Capo.

Plaintiff's expert, Robert Capo, P.E., was qualified to testify as an expert in engineering. *See*, H.T. Day 2, at 72. Mr. Capo testified that he examined the Walls during site visits in October of 2015, June of 2016, and July of 2016. *Id.* at 70, 82. In developing his opinion, Mr. Capo also relied upon a Gateway Engineering survey and a C&R soil report. *Id.* at 70, 71. Mr. Capo further relied upon the "industry standards from VERSA-LOK and the NCMA, the National Concrete and Masonry Association, which the segmental-wall industry relies on for engineering information and engineering criteria." *Id.* at 81, 82.

Mr. Capo opined within a reasonable degree of engineering certainty that the Walls "did not follow the standards of practice for construction[.]" *Id.* at 101. Mr. Capo stated that the Walls were subject to a "fair amount of movement" and were "coming apart." *Id.* at 74. Mr. Capo testified that the design and construction of the Walls required an engineer and a building permit pursuant to Art. VI, Ord. No. 230A, §§ 163-1 et seq. of the Township of South Fayette's municipal code. *Id.* at 83.

Mr. Capo testified that the VERSA-LOK's manufacturing requirements are "more stringent than any local code would be." *Id.* at 100. Mr. Capo further opined that a

> review of the site plan ... show[ed] that [the Walls] were closer than the requirements for VERSA-LOK, thereby requiring an engineering design and soil

9

reinforcement by the way of geogrid soil reinforcement. This reinforcement was not included in the original wall installation but was required due to tiering and slope conditions.

*Id.* at 103.

Mr. Capo explained that the Walls were built without required geogrid except "there was one wall rebuilt at a later date" where geogrid was installed by Defendant incorrectly. *Id.* at 99. Mr. Capo further testified that the geogrid was supposed to be perpendicular to the Walls, but instead a small amount was installed parallel to the Walls. *Id.* at 97,98. Mr. Capo opined that Defendant also constructed the Walls without proper drainage. *Id.*

**b. Defendant's Expert, Lou Marsico.**

Lou Marsico, P.E., was qualified to testify as an engineering expert. *See*, H.T. Day 3, at 56. Mr. Marsico testified that he observed "areas [of the Walls] that needed designed by professional engineers" and that "a lot of [the Walls] failed." *Id.* at 60. Mr. Marsico testified that VERSA-LOK "guidelines ... clearly states an engineer should look at it." *Id.* at 53.

Mr. Marsico opined that "engineering or geogrid" was required for "14 percent" of the Walls (*Id.* at 73) and that geogrid would not have prevented all of the Walls' failures *Id.* at 84. Mr. Marsico further opined that the failures were caused by "not having an engineer design per the requirements of VERSA-LOK." *Id.* at 84.

**4. Defendant's Attempts to Repair the Walls.**

Ms. Nagy testified that the Walls began "moving" shortly after their installation. *See*, H.T. Day 1, at 33, 48. Ms. Nagy credibly testified that

> [e]very time [Mr. Gaglia] would come out, for whatever reason, we would grab him and say, hey, we are concerned about this. Come look at this. He would examine the areas we were concerned about, and, like I said, very often, although it's not documented, he would come back and restack areas and make it look a little bit better.

10

*Id.* at 60.

Ms. Nagy testified that Mr. Gaglia offered to repair the Walls free of charge as noted in an invoice dated May 26, 2009. *Id.* at 46; Plaintiff's Exhibit 2. Ms. Nagy credibly testified that Mr. Gaglia had attempted to repair the Wall numerous times before May 26, 2009, but that he noted it in an invoice only once. *See,* H.T. Day 1, at 47. Ms. Nagy explained that "we started talking to [Mr. Gaglia] pretty early after the construction ... about some of the issues we were seeing." *Id.* at 47, 48. Ms. Nagy credibly testified that Mr. Gaglia returned at least once per year for various purposes and would make repairs to the Walls while he was there. *See,* H.T. Day 2, at 38. She further credibly testified that she did not commence a lawsuit against Defendant because she relied on Mr. Gaglia's statements that he could fix the Walls. *Id.* at 37, 38.

Ms. Nagy testified that in May of 2015 Plaintiffs asked Mr. Gaglia to cease his "band-aid" repair efforts and make a permanent repair with geogrid. *Id.* at 61, 62. She further testified that Mr. Gaglia agreed and offered to remedy the defective Walls with heavy equipment and geogrid before winter. *Id.* Ms. Nagy testified that in October of 2015 Defendant's employees arrived on Plaintiffs' property to repair the Walls. *Id.* at 63. She testified that the employees failed to bring heavy equipment or geogrid. *Id.* at 68. Ms. Nagy further testified that Plaintiffs immediately asked Defendant's employees to leave since they were "wasting their time at our site doing the same thing that had proven not to work in the past anyway." *Id.* at 70.

\* \* \*

## III. <u>STANDARD OF REVIEW</u>

The standard of review regarding a trial court's decision to grant or deny a spoliation

11

sanction is abuse of discretion. The Superior Court of Pennsylvania held:

> When reviewing a court's decision to grant or deny a spoliation sanction, we must determine whether the court abused its discretion. *Croydon Plastics Co. v. Lower Bucks Cooling & Heating*, 698 A.2d 625, 629 (Pa.Super.1997) ("the decision whether to sanction a party, and if so the severity of such sanction, is vested in the sound discretion of the trial court"), *appeal denied*, 553 Pa. 689, 717 A.2d 1028 (1998). "An abuse of discretion is not merely an error in judgment; rather it occurs when the law is overridden or misapplied, or when the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will." *Pilon v. Bally Eng'g Structures*, 435 Pa.Super. 227, 645 A.2d 282, 285, *appeal denied*, 539 Pa. 680, 652 A.2d 1325 (1994).

*Mount Olivet Tabernacle Church v. Edwin L. Wiegand Division*, 781 A.2d 1263, 1269 (Pa. Super. Ct. 2001).

When reviewing the trial court's admission of expert testimony, the Superior Court of Pennsylvania held that "[t]he admission of expert testimony is a matter within the sound discretion of the trial court, whose rulings thereon will not be disturbed absent a manifest abuse of discretion." *Woodard v. Chatterjee*, 827 A.2d 433, 440 (Pa. Super. Ct. 2003) *(quoting Walsh v. Kubiak*, 661 A.2d 416, 419 (Pa. Super. Ct. 1995) *(en banc))*.

The standard of review regarding admissibility of evidence is abuse of discretion or error of law. The appealed ruling must also have been prejudicial to the complaining party to be reversed. The Superior Court of Pennsylvania ruled:

> "The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law." *B.K. v. J.K.*, 823 A.2d 987, 991–92 (Pa.Super.2003). "Thus our standard of review is very narrow.... To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Hawkey v. Peirsel*, 869 A.2d 983, 989 (Pa.Super.2005) *(citing Turney Media Fuel, Inc. v. Toll Bros.*, 725 A.2d 836, 839 (Pa.Super.1999)).

*McManamom v. Washko*, 906 A.2d 1259, 1268–69 (Pa. Super. Ct. 2006).

\* \* \*

## IV.  DISCUSSION

12

<u>(Defendant's Matter Complained of on Appeal (a.)</u>: "This Honorable Court erred as a matter of law and/or abused its discretion by not finding that Plaintiffs' claims were time-barred by the Statute of Limitations;")

## 1. The Court Properly Found that Plaintiffs' Claims were Preserved Under the Repair Doctrine.

Under 42 Pa.C.S. § 5524, actions for negligence must be commenced within two (2) years of the injury's occurrence or they are time-barred. Actions upon a contract must be initiated within four (4) years of the alleged breach of contract pursuant to 42 Pa.C.S. § 5525. The Supreme Court of Pennsylvania, however, recognizes the repair doctrine. "Under the repair doctrine, the applicable statute of limitations will be tolled where the evidence reveals that repairs were attempted; representations were made that the repairs would cure the defects; and the complaining party relied upon such representations." *Gustine Uniontown Associates, Ltd. v. Anthony Crane Rental, Inc., L.P.*, 842 A.2d 334, 344 n.8 (Pa. 2004) (*citing Amodeo v. Ryan Homes, Inc.*, 595 A.2d 1232, 1237 (Pa. Super. Ct. 1991)).

Based upon Plaintiffs' credible testimony and Mr. Gaglia's admission, the Court found that Plaintiffs refrained from seeking a legal remedy against Defendant because they relied upon Mr. Gaglia's repeated representations that he could repair the Walls. The Court further determined that the statute of limitations began to run when Defendant's repair attempts finally ceased in October of 2015. Plaintiffs' praecipe for writ of summons against Defendant on January 8, 2016 was, therefore, timely.

\* \* \*

<u>(Defendant's Matter Complained of on Appeal (b.)</u>: "This Honorable Court erred as a matter of law and/or abused its discretion by not finding that Plaintiffs had committed spoliation of evidence;")

## 2. The Court Properly Found that Plaintiffs Did Not Spoliate Evidence because Defendant's Expert Inspected the Retaining Walls and Defendant Did Not Suffer Prejudice.

13

The Supreme Court of Pennsylvania has long held that "... the destruction or withholding of evidence which a party ought to produce gives rise to a presumption unfavorable to him, as his conduct may properly be attributed to his supposed knowledge that the truth would operate against him." *McHugh v. McHugh*, 40 A. 410, 411 (Pa. 1898).

In *Schroeder v. Com., Dept. of Transp.*, 710 A.2d 23 (Pa. 1998), the Pennsylvania Supreme Court adopted the Third Circuit Court of Appeals' standards for spoliation of evidence as outlined in *Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76 (3d Cir. 1994). *Schroeder, supra* at 27 (*citing Schmid supra* at 81). The Court in *Schroeder* adopted the following standards from *Schmid*:

> In deciding the proper penalty for the spoliation of evidence, the Third Circuit found relevant (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party, and (3) the availability of a lesser sanction that will protect the opposing party's rights and deter future similar conduct.

*Schroeder, supra* at 27 (*citing Schmid, supra* at 79).

The Superior Court of Pennsylvania has ruled that if the Court finds that evidence was spoliated by a party, then the Court "... should select the least onerous sanction commensurate with the spoliator's fault and the other party's prejudice." *Mount Olivet Tabernacle Church v. Edqin L. Wiegand Div.*, 781 A.2d 1263, 1273 (Pa. Super. Ct. 2001) (*citing Schmid, supra* at 79). In jury trials, a remedial instruction to the jury is often the appropriate sanction. *Schroeder, supra* at 26-27. Further, "[w]here fault and prejudice are not severe, dismissal is inappropriate." *Mount Olivet Tabernacle, supra* at 1273 (*citing Schroeder, supra* at 27, 28; *Schmid, supra* at 81).

As addressed *supra*, Plaintiffs gave Defendant ample opportunity to inspect the defective retaining walls prior to demolition. *See*, Procedural History *supra* at 4. Plaintiffs' counsel averred that Defendant's counsel and Defendant's engineer "studied the walls, [and] took measurements."[2]

---

[2]Neither Defendant's counsel nor Mr. Marsico denied this averment.

14

*Id.* Plaintiffs notified Defendant on April 5, 2016 that they intended to demolish and replace the dangerous walls within three (3) weeks and urged Defendant to investigate the Walls prior to demolition. *Id.* Plaintiffs did not demolish the Walls in April and Defendant had more than two (2) months to inspect them. Plaintiffs notified Defendant again on July 13, 2016 that demolition was imminent and urged Defendant to inspect the Walls. *Id.*

The Court determined that Plaintiffs' fault and Defendant's prejudice, if any, were minimal. The Court, therefore, properly denied Defendant's request that Plaintiffs "be precluded from offering any evidence that [Defendant] failed to properly construct the retaining walls."

\* \* \*

(Defendant's Matters Complained of on Appeal (c.) and (d.): "This Honorable Court erred as a matter of law and/or abused its discretion by permitting the admission of evidence which was improperly authenticated, namely: drawings and reports produced by Gateway Engineering, and reports produced by ECS Mid-Atlantic. This Honorable Court erred as a matter of law and/or abused its discretion by permitting the admission of hearsay evidence, namely: the expert report of Robert J. Capo, drawings and reports produced by Gateway Engineering, and reports produced by ECS Mid-Atlantic."

3. **The Court Properly Overruled Defendant's Hearsay and Authentication Objections to Robert Capo's Testimony because Expert Witnesses are Permitted to Rely Upon Outside Reports and Information When Giving Their Opinion.**

When determining the admissibility of an expert's opinion that relied upon reports not in evidence, the Court is bound by the appellate precedent in *Duquesne Light Co. v. Woodland Hills School Dist.*, 700 A.2d 1038 (Pa. Commw. Ct. 1997). Similar to the case *sub judice*, an engineering expert in *Duquesne Light Co.* opined regarding a defectively constructed embankment. The expert's opinion utilized data and soil reports conducted by a non-testifying expert. *Id.* at 1049-50. Opposing counsel objected stating that the information therein was inadmissible hearsay. *Id.* at 1050. The trial court, over opposing counsel's objections, permitted the expert to testify and the Commonwealth Court affirmed. *Id.* The Commonwealth Court, citing Pennsylvania Superior

15

Court precedence, stated:

> Pennsylvania courts recognize an exception to the hearsay exclusionary rule for reports on which experts reasonably rely in reaching their professional conclusions. *Primavera v. Celotex Corporation*, 415 Pa. Superior Ct. 41, 50, 608 A.2d 515, 518 (1992), *petition for allowance of appeal denied*, 533 Pa. 641, 622 A.2d 1374 (1993). Experts are permitted to express opinions based upon reports, not in evidence, provided that such reports are of a type customarily relied upon by experts in the field in making professional judgments. *Id.* at 50, 608 A.2d at 518–19. However, an expert is not permitted to "repeat another's opinion or data without bringing to bear on it his own expertise and judgment." *Id.* at 52, 608 A.2d at 521.

*Id.*

Mr. Capo partially relied upon reports and information from Gateway Engineering and ECS Mid-Atlantic when drafting his report dated November 9, 2017. His reliance on others' reports was permitted under *Duquesne Light Co.* because, as Mr. Capo credibly explained, it was customary for engineering experts to utilize such reports when making engineering determinations. Mr. Capo, moreover, did not merely "repeat" the Gateway Engineering and ECS Mid-Atlantic reports, but he combined his own professional analysis with the reports' data after visiting the Walls and inspecting them. The Court, therefore, properly determined that Mr. Capo's opinion, while relying on reports and information not in evidence, was admissible under the standard set forth in *Duquesne Light Co.*

\* \* \*

(Defendant's Matter Complained of on Appeal (e.): "This Honorable Court erred as a matter of law and/or abused its discretion by permitting the entry of a report, the Powerpoint presentation, prepared by Plaintiffs' expert which had not previously been listed on the pretrial statement and which had not previously been provided to Defendant;")

16

## 4. The Court Properly Permitted Plaintiffs to Display a Microsoft PowerPoint Presentation During Robert Capo's Testimony because it was a Visual Aid and It Did Not Go Beyond the Fair Scope of the Expert Report.

The standard for permitting visual aids during trial was articulated by the Superior Court of Pennsylvania in *Commonwealth v. Rickabaugh*, 706 A.2d 826 (Pa. Super. Ct. 1997). In *Rickabaugh*, the defendant objected to the Commonwealth's use of charts and photographs as visual aids during trial. *Rickabaugh, supra* at 837. Defendant objected on the basis that "the chart's contents were not reasonably based upon the facts in evidence, and, therefore, the chart's use" was impermissible. *Id.* The Superior Court, citing the Pennsylvania Supreme Court, stated:

> "Visual aids may be used to assist the jury in understanding the evidence in appropriate cases, and permission to do so is within the sound discretion of the trial judge." *Commonwealth v. Pelzer*, 531 Pa. 235, 245, 612 A.2d 407, 412 (1992). **This rule applies equally to demonstrative aids used during the actual trial phase** and during the parties' opening and closing arguments.

*Id.* (Emphasis added).

During trial, Plaintiffs utilized a Microsoft PowerPoint presentation ("the PowerPoint") on a projector screen to aid the Court and illustrate Mr. Capo's testimony. Defendant initially objected to the PowerPoint as an exhibit because it was not disclosed or referenced in Plaintiffs' pretrial statements. Plaintiffs responded that it was a visual aid to assist the Court in understanding Mr. Capo's expert testimony and that it was merely a presentation of the photos and information from Mr. Capo's report. Defendant then consented to the PowerPoint on the condition that "it doesn't go beyond his expert report. If it does, I'll have objections to that." *See*, H.T. Day 2, at 61.

The PowerPoint, which was reproduced in a physical handout, contained photographs and information that were disclosed in Plaintiffs' pretrial statements. The PowerPoint in its initial slides, however, also contained photographs of example retaining walls that were not disclosed in

17

either of Plaintiffs' pretrial statements[3]. The Court, therefore, precluded the non-disclosed photos. *Id.* at 77.

Defendant objected to the nineteenth PowerPoint slide because it was not disclosed in the pretrial statements. The slide was titled "Sectional View of West Walls" and depicted Mr. Capo's hand-drawn view of how far apart the walls were. Plaintiffs initially used the slide as a visual aid, but later the slide was admitted in rebuttal of Mr. Marsico's testimony. *See*, H.T. Day 3, at 95, 118-19; Plaintiffs' exhibit 18.

Based upon the use of the PowerPoint as a visual aid and the preclusion of undisclosed photographs the Court did not err in permitting Mr. Capo to use the selected portions of the PowerPoint presentation.

\* \* \*

(Defendant's Matter Complained of on Appeal (f.): "This Honorable Court erred as a matter of law and/or abused its discretion by permitting expert testimony beyond the fair scope of the expert report;")

## 5. Robert Capo's Testimony was Within the Fair Scope of His Expert Report.

[This section incorporates the analysis addressed *supra* under Discussion sections 3 and 4.]

When assessing whether or not an expert's testimony goes beyond the fair scope of the report, the trial court must determine if the opposing party was given "sufficient notice" of what content the expert's opinion would contain. The Superior Court of Pennsylvania ruled:

> No "hard and fast rule [exists] for determining when a particular expert's testimony exceeds the fair scope of his or her pre trial report," and we must examine the facts and circumstances of each case. *Mansour v. Linganna*, 787 A.2d 443, 445–46 (Pa.Super.2001) (*quoting Wilkes–Barre Iron & Wire Works, Inc., v. Pargas of Wilkes–Barre, Inc.*, 348 Pa.Super. 285, 502 A.2d 210, 212–213 (1985) (internal quotations and citations omitted)). In doing so, we must ask the overarching question, which is whether the purpose of Rule 4003.5 is being served. *Id.* We are

---

[3] Plaintiffs filed a Pretrial Statement on March 15, 2018 and an Amended Pretrial Statement on April 23, 2018.

guided by the following:

> [I]n determining whether an expert's trial testimony falls within the fair scope of his pre-trial report, the trial court must determine whether the report provides sufficient notice of the expert's theory to enable the opposing party to prepare a rebuttal witness. In other words, in deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word "fair." The question to be answered is whether, under the particular facts and circumstances of the case, the discrepancy between the expert's pre-trial report and his trial testimony is of a nature which would prevent the adversary from making a meaningful response, or which would mislead the adversary as to the nature of the appropriate response.

*Feden v. Consolidated Rail Corp.*, 746 A.2d 1158, 1162 (Pa. Super. Ct. 2000) (citations and internal quotation marks omitted).

Defendant objected three (3) times during trial claiming that Mr. Capo had testified outside the fair scope of his report.

### a. Defendant's First Fair Scope Objection – Failure to Disclose How Mr. Capo Reached His Opinion.

Defendant's first fair scope objection was as follows:

To say that Mr. Capo did his own measurements and reached his own conclusions when he arrived at his opinion, none of these measurements regarding his own conclusions are set forth in his report. He doesn't say, I went out to the field, and I measured this or I did this soil test and I determined this. It's not in there.

Under Rule 4003.5(c), an expert is bound by his report. He cannot go beyond it. So our objection is if he intends to now change what his proposed testimony would be, that he didn't rely upon Gateway or he didn't rely upon the soils report done by others but did his own investigation, it should have been in his report, and it wasn't.

*See*, H.T. Day 1, at 13. The Court overruled the objection largely because Mr. Capo's report indicated that he both investigated the site *and* relied upon attached outside reports from Gateway:

On October 13, 2015 and at the request of Mrs. Jean Nagy I performed an initial review of the Versa-Lok Mosaic segmental retaining wall system located in the rear yard of the property. ... The following recommendations were made after the initial site visit on October 13, 2015[.] ... In addition, Gateway Engineers supplied a site plan with detailed elevations and this engineer included a wall numbering layout to supplement the July 13, 2016 demolition review.

19

*See*, Robert J. Capo's Report, dated November 9, 2017. Based on these references, Defendant clearly had sufficient notice of the content and basis of Mr. Capo's opinion.

### b. Defendant's Second Fair Scope Objection – Mr. Capo's Reference to His October 13, 2015 Report within his November 9, 2017 Report.

Defendant objected a second time to Mr. Capo's testimony, stating that Mr. Capo could not reference an October 13, 2015 report ("2015 Report") he had written. *See*, H.T. Day 2, at 80. Defendant argued that despite the October Report being referenced within Mr. Capo's November 9, 2017 report, Defendant did not receive a copy of the 2015 Report and Mr. Capo, therefore, should have been precluded from referring to it. *Id.* The Court properly overruled Defendant's objection on the grounds that the November 9, 2017 report substantially quoted the 2015 Report's recommendations and that Defendant had sufficient notice of what Mr. Capo's testimony would entail.

### c. Defendant's Third Fair Scope Objection – Mr. Capo's Rebuttal Testimony.

Defendant objected a third time to Mr. Capo's testimony when Mr. Capo testified as a rebuttal witness to Mr. Marsico. Mr. Capo was rebutting Mr. Marsico's testimony regarding "the slope of the property and various measurements used to calculate it" when Defendant's counsel objected, stating:

> Your Honor, I'm going to object and actually move to strike all of his testimony because none of this is contained within his expert report. I realize he's a rebuttal witness but he can't go out there and rebut his own report which is what he is doing. ... But there's nothing in his report ... that has these measurements or discusses these walls or talks about any of this.

*See*, H.T. Day 3, at 94, 95, 107. The Court overruled this third objection because Mr. Capo was permitted to give rebuttal testimony as of right. The Court further overruled the objection because Mr. Capo was not "rebut[ting] his own report," but instead he was rebutting Mr. Marsico's

20

testimony. Regarding rebuttal testimony, the Pennsylvania Supreme Court has ruled that: "A witness may ... be impeached with proof that on a previous occasion he made a statement inconsistent with his present testimony as well as by the testimony of *other witnesses whose version of the facts differ from that of the witness being impeached.*" *Commonwealth v. Hamm*, 378 A.2d 1219, 1226, n. 11 (Pa. 1977) (emphasis added). Furthermore, this Court has held that "[a] litigant has the privilege of offering rebuttal testimony, and where the evidence proposed goes to the impeachment of the testimony of his opponent's witnesses, it is admissible as a matter of right." *Flowers v. Green*, 420 Pa. 481, 484, 218 A.2d 219, 220 (1966) *quoting Schoen v. Elsasser*, 315 Pa. 65, 172 A. 301 (1934).

For the reasons addressed *supra*, the Court determined that Mr. Capo's testimony was within the fair scope of his report and that Defendant was never prejudiced by unexpected testimony or by "trial by ambush." The Court, therefore, properly denied Defendant's requests to preclude Mr. Capo from testifying.

\* \* \*

(Defendant's Matter Complained of on Appeal (g.): "This Honorable Court erred as a matter of law and/or abused its discretion by entering a verdict against the weight of evidence, insofar as the Court failed to take into account that not all walls were constructed negligently or were in breach of contract, and insofar as the Court failed to take into account the age of the walls and depreciation.")

6. **The Court Properly Found by a Preponderance of the Evidence that Defendant was Negligent and was Liable for Plaintiffs' Damages.**

To succeed in a negligence action the plaintiff must prove by a preponderance of the evidence "four elements: (1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual loss or damage." *Pyeritz v. Com.*, 32 A.3d 687 (Pa. 2011) (*citing Krentz*

21

*v. Consolidated Rail Corp.*, 910 A.2d 20, 27 (Pa. 2006)).

The Court found by a preponderance of the evidence that Plaintiffs' Walls were clearly defective due to Defendant's negligent construction. Any impact that the Walls' age or depreciation may have had on their structural integrity was eclipsed by Defendant's negligent and defective workmanship. No evidence, furthermore, was presented regarding the "age" or "depreciation" of the Walls.

Defendant owed a duty to Plaintiffs to construct the Walls in accord with industry standards for VERSA-LOK retaining walls. Defendant breached its duty by undertaking a construction project that required VERSA-LOK and geogrid when, as Mr. Gaglia admitted, he lacked the experience to do so. *See*, H.T. Day 2, at 147. Mr. Gaglia, moreover, failed to engage an engineer or seek permits as required for the project. *See*, H.T. Day 2, at 83.

Ms. Nagy credibly testified after completion of both Phase 1 and Phase 2 of the Walls "...we were seeing splitting, leaning, [and] tilting." *See*, H.T. Day 1, at 48. Ms. Nagy also credibly testified that the issues were occurring at "...various points throughout the whole wall system, both in Phase 1 and Phase 2..."

Plaintiffs' expert, Mr. Capo, credibly opined that within a reasonable degree of engineering certainty that the Walls "...did not follow the standards of practice for construction...[.]" *See*, H.T. Day 2, at 101. He further opined that the Walls were subject to a "...fair amount of movement..." and were "...coming apart..." *Id.* At 74. Mr. Capo further testified that the Walls were built without required geogrid except in "...one wall [that was] rebuilt at a later date..." where it was installed by Defendant incorrectly. *Id* at 99. He further opined that the Walls were constructed without proper drainage. *Id.* at 98.

The Court found, therefore, that Defendant breached its duty to follow the required standard of care in the construction of the Walls, that said breach caused the faulty construction and deterioration of the

22

Walls, and that the Plaintiffs suffered monetary damages as a result.

\* \* \*

## V. CONCLUSION

The Court properly ruled that the Statutes of Limitations did not bar Plaintiffs' claims since Defendant's efforts to repair the Walls continued until October of 2015. This case was commenced on January 8, 2016.

The Court did not err in not excluding evidence based on spoliation. Defendant had ample opportunity to inspect the Walls prior to demolition.

The Court correctly permitted Plaintiffs' expert, Mr. Capo, to testified since his testimony was within the fair scope of his report.

The Court properly overruled Defendant's objection to the use of a PowerPoint presentation at trial as a visual aid that was within the fair scope of Plaintiffs' expert's report.

The Court properly found by a preponderance of the evidence that Defendant negligently undertook a construction project that it was not qualified to undertake. Defendant's failure to construct the Walls properly made it necessary to demolish and replace them. Plaintiffs were monetarily damaged.

For the foregoing reasons, the Court respectfully requests that Defendant's appeal be denied and the Court's May 11, 2018 decree be affirmed.

BY THE COURT:

_____, J.

Donald R. Walko, Jr., Judge

23